J. E. GREILICK CO. *v.* TAYLOR.

MECHANICS' LIENS—STATEMENT OF CLAIM—AMOUNT DUE — ERROR —EFFECT.

> Where a materialman furnishes materials to a contractor for several jobs simultaneously, and makes no application of the money paid him by the contractor, until the contractor becomes unable to pay, when he arbitrarily fixes an amount, which he subsequently concludes is 25 per cent. too large, as the proper share of the debt of the contractor to be made a lien on the property of the owner, and files a statement therefor, he acquires no lien (§ 10714, 3 Comp. Laws).

Appeal from Grand Traverse; Mayne, J. Submitted February 14, 1906. (Docket No. 156.) Decided April 30, 1906.

Bill by the J. E. Greilick Company against Maud Taylor and David Smith to enforce a mechanics' lien. From a decree for complainant, defendant Taylor appeals. Reversed, and bill dismissed.

Complainant is a dealer in building materials. Defendant Smith is a building contractor. Smith made a written contract with defendant Taylor's husband to erect a dwelling "on the south side of Fifth street, Traverse City, Mich.," for $1,680. In fact the house was erected on lots 12 and 13, of block 4 of Hannah, Lay & Company's Sixth addition, Traverse City, owned in fee by Mrs. Taylor. Mr. Smith was at the same time erecting three other buildings in Traverse City for which the complainant furnished material. This building was erected for a homestead. Mrs. Taylor mortgaged the property for the purpose of raising money to erect it. Mr. Smith completed the building and was paid the full contract price. Complainant did not keep a separate account of the material furnished to contractor Smith for each job. Its books

showed a general account. The sole means of identifying the material furnished for each building were the orders for the material and the delivery tickets or checks issued to the teamsters, who delivered it. Mr. Greilick testified that from those orders and slips he was able to say that he furnished material for the Taylor job to the amount of $934.04. The total amount due on the general account from Smith to complainant was $688.47. Smith failing to pay, complainant filed its notice of lien and took the proper steps to enforce it. It obtained a decree in the court below for $434.04 and interest.

*Covell & Cross*, for complainant.

*Parm C. Gilbert*, for appellant.

Grant, J. (*after stating the facts*). In the sworn statement of lien, filed with the register of deeds, the amount due was stated at $550, which sum it was averred remained due and unpaid over and above all legal set-offs. Afterwards, in the petition to enforce the lien, it was admitted that the sum should have been only $434.04. Mr. Greilick in his direct examination gave evidence tending to show the total amount furnished for the Taylor job to be $934.04. When asked by his counsel how much he had received and applied on this account, he said "$500," leaving unpaid $434.04. He made no explanation of the discrepancy between his sworn statement of lien and the amount stated in the petition and in his testimony.

On cross-examination he testified that the total balance due from Smith on the four jobs for which petitioner furnished material was $688.47. When asked how much of that was on the Haviland job, he could not tell. When asked how much was on the Dean job, he replied:

"Why we believe the man, Smith, to be owing something on all the jobs.

"*Q.* Well, how much?

"*A.* I am not sure that I could tell you.    *    *    *

143 Mich.—45.

"*Q.* Then, you don't know how these amounts were paid, or who paid on the Taylor account?

"*A.* No, sir.

"*Q.* Nor how there came to be $500 credited on the Taylor account?

"*A.* Why, we know that he was receiving money from Taylor and must have paid some on his account, or applied on his account. He never specified when he paid money.

"*Q.* And this account commenced July 10, 1902 — March, 1902. Is that the beginning of his account?

"*A.* Yes, sir.

"*Q.* Now, from there on down, beginning on page 425, down through to October 21, 1902, that shows all the transactions on these four jobs and charges to Smith?

"*A.* It shows his summer's business, that is.

"*Q.* I ask you, then, if you made any entry here giving him any credit on any particular job, or whether it is simply a general credit?

"*A.* It appears to be a general credit.

"*Q.* Then how do you tell us that there is a balance due on each one of those jobs, and you can tell just how much is back and due on the Taylor job?

"*A.* I don't think I have told you that.

"*Q.* Didn't you swear he had only paid $500 on the Taylor account?

"*A.* That is the amount I told you we had credited to the Taylor job.

"*Q.* Well, where is it credited on that account? Sir, show it to me on that book (shows ledger).

"*A.* It doesn't appear on that book.

"*Q.* You said also there was a balance of $434.04 due on the Taylor job, didn't you?

"*A.* Yes, sir.

"*Q.* Where does that show on your books?

"*A.* Our invoices and our tickets will show the amount of the material delivered to—

"*Q.* Yes, but I am calling your attention to the way you keep your account here with Smith. You have a balance of $688.47 charged against Smith?

"*A.* Yes, sir.

"*Q.* And you have got that amount charged against Smith to-day?

"*A.* Yes, sir.

"*Q.* And which one of these payments credited here to.

Smith belonged to the Taylor job, and what is there here to indicate it ?

" *A.* There is nothing there to indicate it.

" *Q.* And when you said you credited this much here you simply did it for the purposes of this suit?

" *A.* This was done some time ago.

" *Q.* When ?

" *A.* Soon after the papers were filed.

" *Q.* And that is the way you adjusted it at that time ?

" *A.* Yes, sir.

" *Q.* So you made up your mind then that you would credit $500 to the Taylor job and scatter the rest round on the others ?

" *A.* Yes, sir.

" *Q.* And you did that some time after these papers were filed?

" *A.* Yes, sir.   *   *   *

" *Q.* Well, when you made that statement of lien in the first place, you didn't know how much was due, did you ?

" *A.* No, I don't believe we did.

" *Q.* How did you get at that $550 ?

" *A.* Well, it was the best we could do, and we wanted to make it big enough.  We were given to understand that we could correct it later.

" *Q.* You simply wanted to make it big enough and take your chances on it, is that it ?

" *A.* I have explained that.

" *Q.* Well, you had a balance at that time against Smith on your books of $688.47 ?

" *A.* Yes, sir.

" *Q.* Now, how did you change that, so as to make it $550 against Taylor; that is what I want to know—when you made that statement ?

" *A.* It was a matter of guess work, I presume, as near as we could get at it.

" *Q.* Will you tell me what computation you made from this account to get at it, to bring it to that sum ?

" *A.* I couldn't do it.

" *Q.* You just thought that that would be big enough, and as near as you could get it, anyway, and that that would do.  Isn't that the truth about it ?

" *A.* Yes, sir; I think I stated so before.

" *Q.* And you made it without any knowledge that it was correct or incorrect ?

" *A.* Yes, sir; but we did correct it as soon as we could.

" *Q.* How long had Mr. Cook been away from here when this statement of lien was made ?

" *A.* I don't know.   He was in·the Uuited States court at Grand Rapids.   He might have been away a month, · I think, and he might have been away only a few days, and he might have been away three weeks.

" *Q.* You had never taken any pains to go over the account with him before ?

" *A.* No, sir.

" *Q.* And when you did go over it afterwards you just split up the payments and just agreed in a general way on what you should credit to him ?

" *A.* Yes, sir.

" *Q.* You didn't change the condition of the account in any way ?

" *A.* No, sir.

" *Q.* Only just agreed among yourselves how you would give the credits ?

" *A.* Yes, sir.

" *Q.* Well, why couldn't you agree on that before Cook came home as well as after.   Cook didn't have anything by which he could tell you how much credit to give to Taylor, did he ?

" *A.* I think after we filed the lien Mr. Smith paid us $317, and at that time, if he did, that would leave the account nearly $1,000.

"*Q.* You think that $317 was paid after the 1st of November, 1902 ?

"*A.* I don't know the date it was paid.

"*Q.* Well, your affidavit is sworn to on the first of November, 1902, so you will have to guess again.

"*A.* No, I thought it was earlier than that.

"*Q.* Well, then, that wasn't the reason, was it ?

"*A.* No, sir.

"*Q.* Then I ask you again, what was there to prevent you or the members of your company, if you were going to make any adjustment of these credits, sitting right down and doing it, just as well before Cook came home as afterwards ?

"*A.* Because I was very much pressed for time that afternoon that I did that.

" *Q.* So you thought you would make the amount big enough and figure it out correctly when you got ready ?

" *A.* Yes, that's it.

"*The Court:* What relation did Mr. Cook sustain to the company at that time ?

"*A.* Simply bookkeeper."

Evidently Mr. Greilick did not keep his account with Mr. Smith with any view to the enforcement of a lien. As payments were made he applied them on his general account without any inquiry from whom Smith received the money, or on what job it should be credited. Evidently not until Smith became unable to pay did he think of attempting to enforce a lien. Then he arbitrarily fixes $550 as the proper share of Smith's debt to him to be made a lien upon the property of Mrs. Taylor, and subsequently concludes that it should be $434.04. Mr. Greilick, under his own testimony, made and filed the sworn statement of lien without the requisite knowledge. As this court, as well as others, has frequently said, these lien proceedings are harsh and must be strictly followed, and the law will not permit one to recklessly make an affidavit of the amount due without any knowledge, thinking he may afterwards correct it, when, in fact, the claim made is 25 per cent. too large. The statute [§ 10714, 3 Comp. Laws] requires a verified statement to be filed, which must contain a just and true account of the demands over and above all legal set-offs. The affidavit must be made by one who knows the facts. This statement, when filed, creates the lien, and the law excuses only an honest mistake in stating the amount due, made by one cognizant of the facts. The case is ruled by *Gibbs* v. *Hanchette*, 90 Mich. 657; *Brennan* v. *Miller*, 97 Mich. 182; and *Meyer* v. *Berlandi*, 39 Minn. 438 (1 L. R. A. 777).

This decision renders it unnecessary to discuss the other questions raised.

Decree reversed, and bill dismissed, with costs of both courts.

McALVAY, BLAIR, MONTGOMERY, and MOORE, JJ., concurred.