HALPIN *v.* GARMAN.

1. MECHANIC'S LIENS—AMOUNT DUE—CLAIM OF LIEN—GOOD FAITH.
   Because he included in the claim for a mechanic's lien
   amounts due to certain subcontractors, who had been paid
   by the owner, the claimant was not deprived of his right
   to a lien, if he did not, as he claimed, know that their
   accounts, for which he was primarily liable, had been paid.[1]

2. SAME—EXTRAS.
   It is not required by the lien law to name the persons who
   have been, but are no longer, in the employ of claimant,
   or to give the names of persons who have furnished ma-
   terials, unless there is some amount due them.

3. SAME—DEFECTS—RECOUPMENT.
   The failure of the contractor to complete the house in a
   workmanlike manner entitled the owner to an allowance
   for the defects, and on examination of the evidence for
   and against this contention, the decree of the trial court
   was modified by granting an additional allowance for the
   claimed omissions and defects.

Appeal from Wayne; Van Zile, J. Submitted April
20, 1916. (Docket No. 59.) Decided June 1, 1916.

Bill by Edward F. Halpin against Emery L. Gar-
man and another to enforce a mechanic's lien. From
a decree for complainant, defendants appeal. Modified
and affirmed.

*Atkinson & Northmore* (*Frank W. Atkinson,* of
counsel), for complainant.

*George W. John* (*William Van Zile,* of counsel), for
defendants.

The plaintiff filed a bill to enforce a mechanic's lien.
On the 15th of October, 1912, he contracted to build

---

[1]Generally upon the question of effect of filing excessive me-
chanics' liens, see comprehensive note in 29 L. R. A. (N. S.) 305.

a two-family flat for the defendants in the city of Detroit, the consideration being $4,600. Work was commenced on October 21, 1912, and was to be completed in 16 weeks from that date. On April 12, 1913, the defendants discharged the plaintiff, claiming defective workmanship. At that time the building was practically completed, with the exception of the exterior painting, and $4,000 had been paid to the plaintiff, leaving due on April 12, 1913, the sum of $600, on the original contract price of $4,600, and $87.45 for extras which it is claimed were ordered by the defendants. Included in the $600 were certain amounts due to subcontractors from the plaintiff.

On April 23, 1913, the plaintiff filed a statement of account and claim of lien in the office of the register of deeds of Wayne county and on April 28, 1913, a true copy thereof was served on the defendants. At or about the time of the filing of the said lien, the defendants paid all the subcontractors with the exception of Farr, who was the painter and had not finished his job. The defendants filed an answer and cross-bill, setting up various claimed defects in material and workmanship, and asked for affirmative relief. The case was heard on the bill of complaint, the cross-bill, and answer thereto, and the testimony was taken in open court. At the conclusion thereof, the court made an allowance of $90 to cover the cost of the exterior painting unfinished when the plaintiff was discharged, and to remedy other defects, and a decree was entered in favor of the plaintiff for $320.89, the amount due on the contract, and for extras and accrued interest, less the allowance of $90. The defendants have appealed.

KUHN, J. (*after stating the facts*). It is the contention of the defendants' counsel that the lien as filed, and the bill to foreclose the same, did not contain "a

just and true statement or account of the demand due him," as is required by section 5 of chapter 296 (§ 10714, 3 Comp. Laws; § 14800, 3 Comp. Laws 1915). This contention is based on the fact that the amount set up by the plaintiff included the amount due from him to subcontractors, and that, some of the subcontractors having been paid by the defendants before the filing of the lien, the inclusion of the amount due them was a careless and negligent claiming of an excessive amount.

The contract price agreed upon in the contract between the parties hereto included the amount due the subcontractors, and the plaintiff clearly had a legal obligation to pay these amounts to the subcontractors. The fact that the lien law gave the defendants the right to retain from the amount due the plaintiff the amounts due to the subcontractors does not discharge the legal obligation created by the contract between the plaintiff and the defendants, nor does it discharge the legal obligation of the contractor to pay his subcontractors the amounts due them. The contractor, for his own protection, it seems to us, has the right to include in the amount he claims the amounts due from him to his subcontractors. In case the contractor should file his lien for the amount due under the contract, less the amounts due the subcontractors, he would be bound by that amount, and if the defendants paid him that amount, it would release their property from the lien attached. If the subcontractors did not file a lien, the owners would not have to pay. The contractor would not be able to assert a further lien for these amounts against the owner's property, and would thus have lost the benefit of the lien statutes for the amount he was obliged to pay the subcontractors. The amount claimed by the plaintiff in his statement of lien included, it is true, amounts which had been paid to certain of the subcontractors

by the owner. The proofs here are convincing, however, that the plaintiff was honestly mistaken, and at the time the statement was prepared did not know that these subcontractors had been paid.

Counsel cite the following cases: *Gibbs* v. *Hanchette,* 90 Mich. 657 (51 N. W. 691) ; *Brennan* v. *Miller,* 97 Mich. 182 (56 N. W. 354) ; *Scheibner* v. *Cohnen,* 108 Mich. 165 (65 N. W. 760) ; *J. E. Greilick Co.* v. *Taylor,* 143 Mich. 704 (107 N. W. 712) ; *Griff* v. *Clark,* 155 Mich. 611 (119 N. W. 1076, 29 L. R. A. (N. S.) 305, 130 Am. St. Rep. 582). The facts in this case are easily distinguished from the facts in the cases cited, because it clearly appears that in those cases the claimant included amounts to which he was not entitled under any circumstances. But in the case at bar the amount stated was the balance actually due under the terms of the contract itself. We think this case is governed by *Lamont* v. *Le Fevre,* 96 Mich. 175 (55 N. W. 687).

The next contention involves the claimed lien for extras which it is urged were not ordered in writing, whereas the contract provided that all extras should be ordered in writing. It appears that the contract itself does not provide that the extras should be ordered in writing, but the specifications for the building do contain such a provision. An examination of this record shows that on the hearing in the court below it was strongly urged that the extras were not furnished at the request of the defendants, and were not worth the amount claimed for them. But we have been unable to find that the claim now urged—that they could not recover for extras because they had not been ordered in writing—was raised in the court below, or relied upon until the case reached this court. We have said that under these circumstances we will not consider this question. See *Jeup* v. *State Fire Marshal,* 182 Mich. 231 (148 N. W. 340).

It is the next contention of the defendants' counsel that the contractor's statement of the amount due did not give the number and name of each subcontractor and laborer in his employ, and that therefore it is not such a statement as complies with the lien law. In our opinion, the only reasonable construction to be given to the statute is that it is not necessary to include in the statement the names of the persons who have been, but who are no longer, in the employ of the claimant, or the names of the persons who have furnished materials unless there is some amount due them.

The remaining contention of the appellant is that the court did not allow the owners anything for the cost of finishing the building in accordance with the plans, after the contractor had ceased working, and that there was no testimony on which to base the allowance made by the court below of $90 for the cost of painting the exterior of the house (which had not been done by the contractor), and for defects in the house. This contention involves a review of all the testimony in the record, which it would not be profitable to attempt to do in an opinion. In a general way it was the defendants' contention that the house was not completed in a workmanlike manner, and this contention is largely supported by the testimony of the defendant Emery Garman himself, who was a carpenter, and the testimony of Mr. John Pagganetti, a contractor of some years of experience, who examined the house and discovered a number of defects. The testimony is controverted by the testimony of the plaintiff and an architect, Thulin, who was a witness for the plaintiff.

It is conceded that the exterior painting of the house was not completed, and the defendant Emery Garman testified that he had obtained an estimate from a Mr. Billings that it would cost $125 to complete it accord-

ing to the specifications. It is endeavored to meet this testimony by the testimony of the painter Farr, who did the work, which the record is convincing was not first-class work. He stated, "I imagine it would take $15 to finish up this job. This includes the inside and outside."

In this class of cases it is often difficult for an appellate court, without the advantage of seeing and hearing the witnesses, to weigh the testimony and get at the truth. But it does seem that the estimate of the defendants with reference to the cost of the painting is nearer the amount required than that of the plaintiff. A careful reading of the testimony satisfies us that the defendants should be allowed $125 for painting the exterior and the interior to bring it up to the specifications.

Considerable criticism is also made, among other things, of the way in which the plate rail was put up in the dining room, and the rail on the porch. In the amount fixed by the trial judge, counsel for plaintiff is of the opinion that $15 was allowed to complete the painting, and the balance of $75 for these defects, and is of the opinion that this was an ample allowance. The best that can be done under the testimony in this case is an approximation, but that this construction was defective the record is convincing, and we think that $75 should be allowed for these defects. We are therefore of the opinion that instead of $90, there should be subtracted $200 from the amount due.

The decree thus modified will be affirmed. Neither party will recover costs of this appeal. The cost of printing the record will be equally divided between them.

STONE, C. J., and BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred with KUHN, J. OSTRANDER, J., concurred in the result.