## KUNZE v. JONES.

1. CONTRACTS—BUILDING CONTRACT—ARCHITECT'S REFUSAL TO ISSUE CERTIFICATE—BREACH OF CONTRACT.

In proceedings by a contractor to enforce a mechanic's lien, where the evidence shows that there was no reasonably unsatisfactory work performed by the contractor, *held*, that the architect's refusal to issue certificate for payment for work done, in accordance with the terms of the contract, was captious, unreasonable, and arbitrary, justifying plaintiff in quitting the job.

2. SAME—PERFORMANCE—REJECTION—ESTOPPEL.

An owner, or architect, as agent of the owner, may not stand by day after day, and see the work on a building go on without objection, and then, after the work is completed, reject it as unsatisfactory.

3. MECHANIC'S LIENS—OVERSTATEMENT OF CLAIM—VALIDITY.

A contractor may include in his claim of lien on a building the amount due from him for materials furnished, and it

is not invalidated because another contractor, who suc-
ceeded him on the job, without notice to plaintiff, paid
for same.

Appeal from Wayne; Hally, J. Submitted Febru-
ary 1, 1918. (Docket No. 172.) Decided March 27,
1918.

Bill by Arthur E. Kunze against Mary E. Jones to
foreclose a mechanic's lien. From a decree dismissing
the bill, plaintiff appeals. Reversed, and decree en-
tered for plaintiff.

*Earl I. Heenan,* for plaintiff.

*Geer, Williams & Martin,* for defendant.

STONE, J. Appeal from decree dismissing bill of
complaint. The plaintiff filed his bill of complaint to
foreclose a mechanic's lien which he had filed against
the lands and building of defendants. By the con-
tract, which was made in writing on October 3, 1913,
between plaintiff, as contractor, and F. P. Jones and
Mary E. Jones, his wife, as owners, plaintiff was to
do, to the satisfaction of the defendants' architect,
acting as the agent of the defendants, all the labor
and furnish the material for the concrete work, brick
work, iron work, and furnish the material and con-
struct tile drains and inside sewers, and perform the
labor of setting all the stone work for a certain build-
ing then and there about to be erected by the said F.
P. Jones and Mary E. Jones on certain described land
in the village of Highland Park, in consideration of
the sum of $1,425 to be paid by the said defendants,
who were the owners of said premises as tenants by
the entireties. F. P. Jones died pending the case, and
the title to the property has vested in Mary E. Jones
as survivor.

By the terms of the contract, the plaintiff, as such

contractor, was to proceed in a prompt and diligent manner and wholly finish the said work, but the time limit in which the contract was to be completed was left blank.

The 10th clause of said contract was as follows:

"Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in the performance of any of the agreements on his part herein contained, such refusal, neglect or failure being certified by the architect, the owners shall be at liberty, after three days' written notice to the contractor, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the architect shall certify that such refusal, neglect or failure is sufficient ground for such action, the owners shall also be at liberty to terminate the employment of the contractor for the said work and to enter, upon the premises and take possession of all materials thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor, he shall not be entitled to receive any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under the contract shall exceed the expense incurred by the owners in finishing the work, such excess shall be paid by the owners to the contractor, but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owners. The expense incurred by the owners as herein provided, either for furnishing materials or for finishing the work, and any damage incurred through such default, shall be audited and certified by the architect whose certificate thereof shall be conclusive upon the parties."

The 13th clause was as follows:

"And it is hereby mutually agreed between the parties hereto that the sum to be paid by the owners to

the contractor for said work and materials shall be Fourteen Hundred and Twenty-five ($1,425.00) subject to additions or deductions on account of alterations as hereinbefore provided, and that such sum shall be paid in current funds by the owners to the contractor in installments, as work progresses, on certification from the architects, reserving 15 per cent. until the building is entirely completed. It being understood that the final payment shall be made within 60 days after this contract is completely finished."

The plaintiff started the work on or about October 6, 1913, and had made such progress that on or about October 16th the architect gave him a certificate for $500, the work having been performed in a manner reasonably satisfactory to the architect up to that date.

This amount was paid to the plaintiff by the owners. Plaintiff started veneering above the foundation, and continued to have work done on the building intermittently until November 22d.

Plaintiff claimed that some of the delays were caused by the carpenters, over whom he had no control; that some delays occurred on account of his workmen not working steadily.

The plaintiff testified that he saw the architect on the job frequently, and that he never complained of the plaintiff's work being unsatisfactory until plaintiff asked him for a second certificate.

Upon the hearing, there was a sharp conflict in the testimony as to the progress of the work at this time. The plaintiff testified:

"After the first payment of $500 was made to me I veneered the two sides of the building, and practically all the rear, and a good third of the front with pressed brick. I put in porches and studdings for all stone steps."

It was the further claim of the plaintiff that just prior to November 28th he called at the architect's

office several times to get a certificate for more money, but could not find the architect there, so he wrote him a letter requesting a certificate for payment.

Plaintiff finally had a conversation with the architect in which the latter stated to him that the work which he had done was unsatisfactory, and the architect refused to give the certificate requested by the plaintiff; that plaintiff then asked the architect to point out to him what part-of the work was unsatisfactory, and also told the architect that if there were any unsatisfactory things he would be glad to remedy them.

The plaintiff further testified that after going to the architect's office several times more, and not finding him in, he left at the office the following paper to be signed by the architect:

"DETROIT, MICH., Nov. 28, 1913.
"A. E. KUNZE:
"I hereby agree to accept brick work that is done on 2-family flat building located on Cortland Ave. being built for F. P. Jones to date. Except."

But as claimed by the plaintiff, the architect never pointed out to him what part of the work was wrong or unsatisfactory and in fact refused to do so; that at the time of the plaintiff's request for this second certificate he had become liable for, and had expended for labor and materials the sum of $1,244.39; that plaintiff had actually paid out all of this amount, except $340.39; that he had received $500; so that there was at this time actually due plaintiff $744.38, less the amount which he owed for materials, which was $340.39, or a net amount due plaintiff of $403.99; that the building at this time was substantially completed, the work above described having been done.

The plaintiff further claims that to finish the work at that time the labor would not amount to more than $75; that there were enough of the common brick on

the ground to complete the building; but that a few more pressed brick would be needed.

At this time plaintiff mailed a letter requesting a payment of $650. The architect replied as follows:

"DETROIT, MICH., Mon., Dec. 1st.

"A. E. KUNZE,

"*Dear Sir:* In regard to your communication of Nov. 28th, I will not give estimate for $650, or any part of it, nor will I accept brick work, that is far from being satisfactory, I might say rotten, and furthermore, I will say that unless you show your willingness to proceed with the work within 48 hours from receipt of this letter, I will use other means to finish the work.          Yours truly,

"ULYSSES E. CLOUTIER."

To which the plaintiff replied as follows:

"DETROIT, MICH., Dec. 3, 1913.

"MR. ULYSSES E. CLOUTIER,

"*Dear Sir:* In regard to your communication of Dec. 1st, I refuse to go ahead with said work, unless you make the payment as I demanded, or according to contract. If not I must find some other way for collecting them, by way of liens, for people that have furnished material there, and myself also.

"I remain,

"A. E. KUNZE."

Plaintiff claims that the architect did not point out to him the parts of the work which the architect considered unsatisfactory, and did not make the payment requested, or any part of it, and that the plaintiff then left the work.

On December 4, 1913, the architect let the balance of the work to Axel Carlson, who was a carpenter contractor, and who had the carpenter work on the job. Carlson began work on or about December 4th. There was no advertising for bids, but the architect simply gave Carlson a contract to complete the job for the difference between the original price with plaintiff ($1,425) and the amount plaintiff had re-

ceived ($500), or $925.  The $340.39 owing by plaintiff for material was paid by Carlson, and he received $150 for his services.  This second contractor finished the work without making any changes in that which had been done by the plaintiff, and of which the architect had complained.  There was other testimony corroborative of that of the plaintiff both as to the character and progress of the work at the time the plaintiff left the job.

On behalf of the defendant it was claimed, and the architect testified that under the plaintiff's contract the work dragged and that for "three weeks at a stretch" plaintiff had no men on the job; that if everything had gone smoothly the entire job ought to have been completed in 30 days; that after the work was finished up to about the first floor joists, that part of the work having been performed in a manner reasonably satisfactory to the architect, plaintiff was given a certificate for $500, which was paid; that after this payment the work done was unsatisfactory to the architect.  On cross-examination the architect testified as follows:

"I don't just remember when I first told Mr. Kunze that the work was unsatisfactory.  It was shortly before I wrote him that letter on December 1st; about a week or so, may be a few days, for all that I can remember.  I saw Mr. Kunze at the office.  I told him in my own office.  I never told him on the job.  I should judge Mr. Kunze had been on the job about two or three weeks when I told him this.

"*Q.* That was the first time that you told him that, that work was unsatisfactory to you?

"*A.* No, I told him that before he quit, but after he quit I did not see him very often.

"*Q.* When did you tell him?

"*A.* I told him on the job, before the work was stopped.  Just shortly after the work was stopped. I told him in what respects the work was unsatisfactory.  He didn't say much.  He said he would fix it,

but he never did anything with it. He didn't start to fix it. He didn't ask me to point out where it was wrong. I pointed it out to him myself."

Witness had before testified that the plaintiff's work was unsatisfactory to him, in that the joints in the veneering were all uneven, crooked and all thicknesses. The following appears in his cross-examination:

"*Q.* Was any of the work that was done by Mr. Kunze torn out? Did you tear that work down that was crooked, or not.

"*A.* No, I did not. They are there yet. I terminated Mr. Kunze's contract on account of his refusal to go ahead with the work."

It is apparent that the controlling question in the case is, Who first broke the contract? It is the claim of the plaintiff that the architect, by his unreasonable, and captious conduct, compelled the plaintiff to abandon the contract; and that the plaintiff was not in default either in the progress or character of the work done by him, and section 14808, 3 Comp. Laws 1915, is relied upon. It reads:

"When the owner, part owner or lessee, shall have failed to perform his part of the contract, and by reason thereof the other party shall, without his default, have been prevented from completely performing his part, he shall be entitled to a reasonable compensation for as much thereof as he has performed, in proportion to the price stipulated for the whole, and the court shall adjust his claim accordingly."

We have carefully read the testimony, and are of the opinion that there was no reasonably unsatisfactory work performed by the plaintiff; that the work that he had done was reasonably good work. The architect testified:

"About all the trouble with the veneering that I could see was that the veneering was not straight, and the joints were not straight. There was no other trouble with the veneering."

and no change was made in that work when the new contractor took hold of the work. Furthermore, an experienced bricklayer, apparently a disinterested witness, afterwards examined the work to determine the character of the brick work, and he testified: "I consider the brick work a very good job, as the run of work runs."

We think that the plaintiff is correct in the claim that at no time during the period between the first payment, and the request for a second payment, was the plaintiff directly or indirectly, by intimation or otherwise, informed or led to believe by the architect that the work which he had done, and was doing, was unsatisfactory. By the terms of the contract payments were to be made in installments as the work progressed, on certificates of the architect.

After the plaintiff had received $500, and after an interim of about 37 days, and after, as he claims, he had invested $1,244.39 in labor and material for defendant's building, he asked for the sum of $650, or if not this amount then "according to the contract." He was refused that sum "or any part of it."

It seems to us that at the time of this request plaintiff was reasonably entitled to a payment under the contract, of at least some sum approximating the amount requested. The architect was frequently on the job.

As was said by this court in *Schliess* v. *City of Grand Rapids,* 131 Mich. 52, 62, the law would not permit defendant or the architect, her agent,

"To see the work go on, to ratify it day by day and week after week * * * and then say, when the work is done, 'you have not complied with the contract.' The time to accept or reject was when the work was being done. It could not lull the plaintiff into the belief that this work was satisfactory, and, when completed, reject it."

The learned trial judge dismissed the plaintiff's bill

of complaint, among other things, for the reason that
by the terms of the contract the plaintiff subjected

"Himself to the conclusions of the architect respect-
ing the character of the work, but was subjecting him-
self to the conclusions of the architect in the case that
the architect determined to put him off the job. * * *
Now I do know that in some instances the courts have
pointed out that an unreasonable demand must not be
insisted upon by the architect, under these circum-
stances, and if an unreasonable demand is insisted
upon by the architect, under these circumstances the
court of equity has jurisdiction to set aside his unrea-
sonable demands and do justice between the parties.
That is, I think, the doctrine that is laid down in *Gier*
v. *Daiber*, 148 Mich 190. * * * I personally am
obligated to follow that, and I am going to follow that
so far as the demands of the architect are concerned,
but there is another part of the contract here, which
portion of the contract, and the action of the architect
under it, has not been met with any sufficient testi-
mony; any testimony that to me would satisfy me that
a conclusion different from the one that I have reached
should be reached. In the event of the abandonment
of the work, or in the event of the contractor being
put off the work, it is up to somebody to complete the
work, and on the completion of the work the architect
has to certify and audit the account. In this case the
architect has certified and audited to the owners the
account of this second contractor to the extent of
$936.15. He has in like manner sworn that it was
necessary to use that sum of money to complete the
work, and buy the material and pay for the material
that had been left unpaid for, by the other contractor."

The chancellor held that the testimony of the archi-
tect had not been met by the plaintiff. It should be
borne in mind that the architect testified: "I termi-
nated Mr. Kunze's contract on account of his refusal
to go ahead with the work." So the question recurs,
Was the plaintiff justified in quitting the job? If he
was justified in his claim that, under the contract, he
was entitled to a certificate from the architect for an
installment of payment, in the progress of the work.

and was captiously, unreasonably and arbitrarily refused such certificate by the architect, and this was the reason for quitting, then plaintiff has brought himself under the provisions of the section of the statute above quoted, and is entitled to relief, without reference to what was subsequently done by the architect and the defendant. In our opinion the plaintiff has sustained the burden of proof on this branch of the case by a clear preponderance of the evidence.

It is stated by counsel for defendant that plaintiff in his claimed lien made an overstatement of claim. We think that the claim was authorized under the holding of this court in *Halpin* v. *Garman,* 192 Mich. 71. The contractor, for his own protection, had the right to include in the amount he claimed, the amounts due from him for materials furnished. At the time of the filing of the statement of account and lien, plaintiff had not paid, nor was there evidence that he had notice that the outstanding bills had been paid by the defendants.

We think that the plaintiff is entitled to a decree, as prayed for, in the sum of $403.99 as of December 1, 1913, with interest and costs to be taxed; and that the decree below should be reversed, and a decree entered in this court accordingly.

BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred. OSTRANDER, C. J., and KUHN, J., did not sit.