DENHAM v BEDFORD

GILLISPIE v BEDFORD

Docket Nos. 61284, 61283. Argued June 5, 1979 (Calendar No. 3).—
Decided February 1, 1980.

Edna Denham and others brought an action for negligence
against Thomas Bedford, Jr., and for liability under the dram-
shop act against R.C.S., Inc., the operator of "Bimbo's on the
Hill" in Ann Arbor, for injuries arising out of an automobile
accident with a car which defendant Bedford was driving. Allen
B. Gillispie brought a similar action, arising out of the same
accident, against defendants Bedford, R.C.S., Inc., and others.
The cases were consolidated for trial, and a jury in Washtenaw
Circuit Court, William F. Ager, Jr., J., returned a verdict for a
total of $108,025 in damages and $15,403.18 in prejudgment
interest against defendant Bedford and a verdict of no cause of
action as to defendant R.C.S., Inc. Defendant Bedford's automo-
bile insurer, Transamerica Insurance Group, paid the plaintiffs
$40,000, the maximum coverage for multiple claims arising out
of one accident under the terms of Bedford's insurance policy,
and was added as a party defendant to determine its liability
for the prejudgment interest. Transamerica argued that pay-
ment of prejudgment interest would exceed its contractual
obligation under the insurance policy, to pay all interest which
accrued after the entry of the judgment, and that the prejudg-
ment interest provision of the Revised Judicature Act does not

REFERENCES FOR POINTS IN HEADNOTES

[1, 11] 43 Am Jur 2d, Insurance §§ 51-53, 56.
[2] 43 Am Jur 2d, Insurance § 53.
   44 Am Jur 2d, Insurance §§ 1685-1688.
[3] 73 Am Jur 2d, Statutes §§ 278-280.
[4, 5] 16A Am Jur 2d, Constitutional Law §§ 704, 705.
[6] 43 Am Jur 2d, Insurance §§ 271-273.
[7, 10] 44 Am Jur 2d, Insurance §§ 1685-1688.
[8] 44 Am Jur 2d, Insurance § 1687.
   Liability insurer's liability for interest and costs on excess of
   judgment over policy limit. 76 ALR2d 983.
[9] 44 Am Jur 2d, Insurance § 1685.
[12] 16A Am Jur 2d, Constitutional Law §§ 663, 704, 705.

apply to the liability of an automobile insurer, which is regulated under the Insurance Code and the financial responsibility act. The Washtenaw Circuit Court found that defendant Transamerica was not liable for the prejudgment interest. The Court of Appeals, V. J. Brennan, P.J., and D. E. Holbrook, J. (Martin, J., dissenting), reversed and remanded for entry of a judgment against Transamerica for $5,695.47 as its share of the prejudgment interest (Docket Nos. 77-2596, 77-2597). Transamerica Insurance Group appeals. In an opinion by Justice Moody, joined by Chief Justice Coleman and Justices Williams and Levin, the Supreme Court *held:*

1. While both the Insurance Code and the financial responsibility act purport to govern the practices of insurance companies there is no indication that the Legislature intended that these acts be all-inclusive. Although compliance with the Insurance Code is required to transact insurance business in Michigan, the statutory language does not support a conclusion that insurance companies are not subject to other statutes.

2. To follow the insurer's reasoning in this case would have the practical effect of making the prejudgment interest statute a nullity. The Legislature does not act in a vacuum; it was obviously aware, when enacting the Revised Judicature Act, that the vast majority of tort judgments are paid by insurance companies. The Legislature must have intended that the prejudgment interest statute have some meaning and, therefore, apply to insurance companies. It would be fundamentally unreasonable to conclude that the Legislature intended that the statute apply to individual and corporate defendants, the self-insured, and the State of Michigan, but not to insurance companies.

3. Transamerica also argues that application of the prejudgment interest statute to its insurance policy violates the constitutional prohibition against impairing the obligation of contract because it would, in effect, amend the insurance contract to increase the coverage or risk beyond that to which the insurer had agreed by contract. This argument is without merit. The prejudgment interest statute, a part of the Revised Judicature Act, is a remedial statute entitled to liberal interpretation. Furthermore, the Legislature may modify the method of enforcement of a contract without impairing its obligation. Since the prejudgment interest statute merely modifies a remedy and not a substantive contractual right, there can be no constitutional objection to its application to insurance policies.

4. There is language in the insurance policy that any provision of the policy which is in conflict with the statutes of the

state in which it is issued is amended to conform to the statutes. Since there is an obvious conflict between the provision of the policy for postjudgment interest only and the statutory provision for prejudgment interest from the filing of the complaint, the language of the policy operates to amend the insurance policy to conform with the prejudgment interest statute. Furthermore, the language of an insurance policy should be strictly construed against the writer, and in favor of the insured. The insurance company was the drafter of the policy; the choice of language belonged to it. If the insurance company fails to write a provision to indicate with reasonable certainty what it means by the provision, it has no just cause to complain when that provision is given a reasonable construction contrary to its contentions.

5. Interest and court costs are added to a judgment to compensate the prevailing party for the delay in payment of money damages and to put back in his pocket some of the expense he incurs in instituting and prosecuting an action. Transamerica's argument that any interest which causes the insurer to pay a sum in excess of its policy limit intrudes on the right and ability to contract to limit its risk runs contrary to the Legislature's intent in enacting the prejudgment interest statute. The common-law rule, in most states, has been established that the insurer may be obligated to pay cost or interest on a judgment recovered against the insured although these items may bring the insurer's total payment beyond the limits in the policy. There is no reason that the same principle should not apply to prejudgment interest. The Legislature has dictated that interest should accrue from the date of filing the complaint, and the legislative purpose of compensating the prevailing party can only be effected by the allowance of prejudgment interest in this case, even if the interest exceeds the limits of the insurance contract.

6. Considerations of public policy fully support this result. To make the insured responsible for payment of prejudgment interest in excess of the policy limits appears to be an unconscionable result. By the terms of the insurance policy the insurer retained control over any investigation, settlement, or litigation. The insured had no control over the processing of the claim, and if the insured chose to act or attempted to settle of his own volition, he would run the risk of forfeiture of any rights under the policy. No manifest injustice is committed by holding the insurer liable for prejudgment interest. The insurer had complete control over the $40,000 from the date of filing the complaint until it tendered that amount to the plaintiffs.

Even assuming that the insurer were required to set the funds aside from its general investment fund because of the pending litigation, the funds did not remain idle. They were invested. Even assuming the investments were conservative short-term enterprises, the insurer certainly would not lose anything by paying prejudgment interest but would probably retain a profit. Payment of prejudgment interest not only compensates the prevailing party, but liability for it may act as an incentive to the insurer to settle a meritorious claim promptly. Any other result allows the insurer to engage, with impunity, in delaying tactics at the expense of its insured. Therefore, the defendant insurer, under the Revised Judicature Act, is liable for prejudgment interest on that part of the judgment which is the liability of the insurer under the policy.

Affirmed.

Justice Kavanagh, joined by Justices Fitzgerald and Ryan, concurred in affirmance. They did not agree that there is a common-law right to interest in Michigan; the right is purely statutory. They agreed that the prejudgment interest statute need not appear in the Insurance Code or the financial responsibility act to apply to the defendant insurer, because while these laws regulate the practices of the insurance industry, they are not the exclusive government of it; insurance companies are subject to the general laws of this state as are all other business enterprises. A statute which changes only a remedy, as does the prejudgment interest statute, may be applied retroactively without impairing the obligation of contracts. They agreed that public policy prompts the disposition of these cases.

82 Mich App 107; 266 NW2d 682 (1978) affirmed.

### OPINION OF THE COURT

1. INSURANCE — STATUTES — CONSTRUCTION.

   There is no indication that the Legislature intended that the provisions of the Insurance Code and the financial responsibility act, both of which purport to govern the practices of insurance companies, be all-inclusive; although compliance with the Insurance Code is required to transact insurance business in Michigan, the statutory language does not support a conclusion that insurance companies are not subject to other statutes (MCL 257.501 *et seq.,* 500.100 *et seq.;* MSA 9.2201 *et seq.,* 24.1100 *et seq.*).

2. COSTS — PREJUDGMENT INTEREST — INSURANCE.

   It would be fundamentally unreasonable to conclude that the Legislature intended that the prejudgment interest provision of

the Revised Judicature Act apply to non-insurance-company defendants, or the self-insured or the State of Michigan, but not to insurance companies; the Legislature does not act in a vacuum, and it was obviously aware, when enacting the Revised Judicature Act, that the vast majority of tort judgments are paid by insurance companies (MCL 600.6013; MSA 27A.6013).

3. COSTS — PREJUDGMENT INTEREST — STATUTES.

The prejudgment interest provision of the Revised Judicature Act is a remedial statute entitled to liberal interpretation (MCL 600.102, 600.6013; MSA 27A.102, 27A.6013).

4. CONTRACTS — REMEDIES — STATUTES — CONSTITUTIONAL LAW — IMPAIRMENT OF CONTRACTS.

The Legislature may modify the remedy for enforcement of a contract without impairing the obligation of contract (Const 1963, art 1, § 10).

5. COSTS — PREJUDGMENT INTEREST — CONSTITUTIONAL LAW — IMPAIRMENT OF CONTRACTS.

The prejudgment interest provision of the Revised Judicature Act merely modifies a remedy and not a substantive contractual right, and, therefore, there can be no constitutional objection to its application to insurance policies; the statutory remedy becomes a part of the insurance contract, replacing any contractual provisions that are contrary to the statute (MCL 600.6013; MSA 27A.6013).

6. INSURANCE — CONTRACTS — CONSTRUCTION.

The language of an insurance policy should be strictly construed against the writer, and in favor of the insured; if the insurance company fails to write a provision to indicate with reasonable certainty what it means by the provision, it has no just cause to complain when that provision is given a reasonable construction contrary to its contentions.

7. COSTS — INTEREST.

Interest and court costs are added to a judgment to compensate the prevailing party for the delay in payment of the money damages determined and to put back in his pocket some of the expense he incurs in instituting and prosecuting an action.

8. COSTS — INSURANCE.

An insurer may be obligated to pay costs or interest on a judgment recovered against its insured although those items

may bring the total payment beyond the limits set in the policy.

9. Costs — Prejudgment Interest — Insurance.

The Legislature has dictated that interest on a money judgment should accrue from the date of filing the complaint; if the legislative purpose was to compensate the prevailing party for the delay in payment of money damages and to cover the costs of litigation, that purpose can only be effected by the allowance of prejudgment interest against a defendant insurer, even if the interest exceeds the limits of the insurance policy (MCL 600.6013; MSA 27A.6013).

CONCURRING OPINION BY KAVANAGH, J.

10. Remedies — Costs — Prejudgment Interest — Statutes.

*There is no common-law right to prejudgment interest in Michigan; the right is purely statutory (MCL 600.6013; MSA 27A.6013).*

11. Insurance — Statutes.

*The Insurance Code and the financial responsibility act regulate the practices of the insurance industry, but they are not the exclusive government of it; insurance companies are subject to the general laws of this state as are all other business enterprises (MCL 257.501 et seq., 500.100 et seq.; MSA 9.2201 et seq., 24.1100 et seq.).*

12. Contracts — Remedies — Statutes — Constitutional Law — Impairment of Contracts.

*A statute which changes only a remedy may be applied retroactively to an insurance policy written before it was enacted without impairing the obligation of contracts; therefore, the application of the prejudgment interest statute to an insurance policy does not unconstitutionally impair the defendant insurer's contractual rights (Const 1963, art 1, § 10; MCL 600.6013; MSA 27A.6013).*

*Calder, Kirkendall & Logeman, P.C.,* for plaintiffs.

*Moore, Sills, Poling, Wooster, Sinn & Taylor, P.C.,* for defendant Transamerica Insurance Group.

BLAIR MOODY, JR., J. We granted leave to appeal

to consider whether an insurer is liable for prejudgment interest pursuant to the prejudgment interest statute, MCL 600.6013; MSA 27A.6013, on that portion of a judgment representing the policy limits of the insurer. In so doing, we are asked to consider whether an insurer can be obligated by statute to pay as interest sums of money over and above the contractual limitations of an insurance policy. Based upon the intent of the Legislature, interpretation of the insurance policy, the common law, and considerations of public policy, we determine that the prejudgment interest statute is applicable to insurance contracts and, therefore, an insurer may be obligated to pay interest in excess of the contractual limitations of an insurance policy.

Accordingly, we affirm the Court of Appeals.

## Facts

On March 30, 1973, plaintiffs were involved in an automobile accident with defendant Thomas Bedford, Jr. Plaintiffs' vehicle, which was driven by plaintiff Edna Denham, was struck by the vehicle driven by defendant, when defendant veered across the centerline of a street. Immediately prior to the accident, defendant Bedford had been drinking in a bar known as "Bimbo's on the Hill", which was operated by R.C.S., Inc.

On April 17, 1974, plaintiffs initiated a negligence action against Bedford and a dramshop complaint against the bar.[1]

---

[1] There is some factual dispute as to whether Transamerica offered the entire $40,000 policy limit to plaintiffs prior to trial. Even if such an offer were made, plaintiffs may have felt compelled to reject the offer because of the "name and retain" requirement of the dramshop act. The pertinent portion of the dramshop act reads as follows:

"No action against a retailer or wholesaler or anyone covered by this act or his surety, shall be commenced unless the minor or the

A jury trial was commenced on July 19, 1976. On July 30, 1976, the jury returned a verdict of no cause of action against defendant bar. A verdict, however, was entered for plaintiffs against defendant Bedford for $108,025, plus $15,403.18 in prejudgment interest.

Defendant Bedford's automobile was covered by an insurance policy issued by a subsidiary of the Transamerica Insurance Group. The policy provided $40,000 maximum coverage for multiple claims arising out of one accident.

On September 9, 1976, judgment was entered on the verdict; and, subsequently, Transamerica paid plaintiffs $40,000. Transamerica then filed a motion in the trial court for determination of its responsibility for any prejudgment interest on the $40,000, the policy limits, paid to plaintiffs.[2] Transamerica disclaimed any liability for the $5,695.47 prejudgment interest on the $40,000 portion of the judgment, arguing that any payment of prejudgment interest would exceed its contractual obligation under the policy.

The trial court ruled that Transamerica was not liable for prejudgment interest over and above its policy limits. On appeal, the Court of Appeals reversed. 82 Mich App 107; 266 NW2d 682 (1978).

---

alleged intoxicated person is a named defendant in the action and is retained in the action until the litigation is concluded by trial or settlement." MCL 436.22; MSA 18.993.

We note that the Court of Appeals has construed the dramshop act so as not to prevent settlements with the individual defendant. According to that Court, the dramshop act merely meant that the individual defendant must be named and retained in the lawsuit. *Buxton v Alexander,* 69 Mich App 507; 245 NW2d 111 (1976), *lv den* 399 Mich 827 (1977).

[2] Transamerica Insurance Group was not originally a party in the suit brought by plaintiffs. Transamerica was added as a party defendant by stipulation of the parties for the purpose of determining if it owed prejudgment interest.

## DISCUSSION

In this factual setting, the issue crystallizes: whether an insurer can be held liable for prejudgment interest in excess of the contractual limitations in its insurance policy.

## I

As a prelude to our discussion, it becomes necessary to set forth the specific contractual provisions of the insurance policy and the statutory language which are at the root of the controversy in this case. The pertinent contractual provisions of the insurance policy issued by Transamerica to Thomas Bedford, Jr., read as follows:

"II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS

"1. As respects such insurance as is afforded by the other terms of this policy under Coverages A and B, the company shall:

"A. Defend in his name and behalf any suit against the insured arising from any alleged claim for bodily injury or property damage, whether such suit is groundless, false, fraudulent, or otherwise, but the company shall have the right to conduct investigations as to any such claim, negotiate for adjustment or settlement thereof, and to enter upon and conduct the defense of the insured against the same as it may deem expedient without waiving any of the provisions of this policy *or subjecting the company to any liability beyond the limits provided in this policy,* and

"B. (a) Pay all costs lawfully taxed against the insured in any such suit and all expenses pertaining thereto incurred by the company; and

"(b) *Pay all interest which shall accrue after the entry of judgment and until the company has paid, tendered, or deposited in court such portion of any judgment not exceeding the limit of the liability of the company."* (Emphasis added.)

In contrast to the insurance policy provisions is the prejudgment interest statute, which provides:

"Sec. 6013. *Interest shall be allowed on any money judgment recovered in a civil action, such interest to be calculated from the date of filing the complaint* at the rate of 6% per year unless the judgment is rendered on a written instrument having a higher rate of interest in which case interest shall be computed at the . rate specified in the instrument if such rate was legal at the time the instrument was executed. In no case shall the rate exceed 7% per year after the date judgment is entered. In the discretion of the judge, if a bona fide written offer of settlement in a civil action based on tort is made by the party against whom the judgment is subsequently rendered and the offer of settlement is substantially identical or substantially more favorable to the prevailing party than the judgment, then no interest shall be allowed beyond the date the written offer of settlement is made." (Emphasis added.) MCL 600.6013; MSA 27A.6013.

## II

Defendant Transamerica argues that its liability under the insurance policy for the payment of interest is clearly delineated, *i.e.,* the insurer will "pay all interest which shall accrue *after* the entry of judgment". Since Transamerica tendered the entire policy limits immediately after the entry of judgment, it has no liability for interest. Transamerica asserts that the prejudgment interest statute is inapplicable to insurance policies because the statute is a part of the Revised Judicature Act of 1961, MCL 600.101 *et seq.;* MSA 27A.101 *et seq.* According to this argument, the Legislature did not intend that the prejudgment interest statute would apply to insurance companies; because if it had, it would have included the statute within either the Insurance Code of 1956,

MCL 500.100 *et seq.;* MSA 24.1100 *et seq.,* or the financial responsibility act, MCL 257.501 *et seq.;* MSA 9.2201 *et seq.,* which acts govern the activities of insurance companies and dictate what provisions should be placed in insurance policies.

We find defendant's arguments unpersuasive. While both the Insurance Code and the financial responsibility act do purport to govern the practices of insurance companies, there is no indication that the Legislature intended that the provisions of these acts be all-inclusive. We note that § 120 of the Insurance Code reads as follows:

"No person shall transact an insurance or surety business in Michigan, or relative to a subject resident, located, or to be performed in Michigan, without complying with the applicable provisions of this code." MCL 500.120; MSA 24.1120.

Although technical compliance with the code is required, it would take an enormous leap of faith to conclude from this language that the code was intended to be exhaustive and, therefore, insurance companies are not subject to other statutory enactments.

In addition, there is another consideration which militates against defendant's construction of the prejudgment interest statute. To follow the insurer's logic in this case would have the practical effect of making the prejudgment interest statute a nullity. We do not think that the Legislature acts in a vacuum. The Legislature was obviously aware in enacting the statute that the vast majority of tort judgments are paid by insurance companies. Clearly, then, the Legislature must have intended that the statute have some meaning and, therefore, apply to insurance companies. It would be fundamentally unreasonable to conclude that

the Legislature intended that the statute apply to individual and corporate defendants, or the self-insured or the State of Michigan[3] but not to insurance companies.

Transamerica next argues that if the prejudgment interest statute were construed as applying to insurance policies, such construction would be constitutionally defective in violation of Const 1963, art 1, § 10.[4] Under this assertion, an expansive interpretation of the interest statute would require amendment of the insurance contract with a resultant increase in the coverage or risk over and above that to which the insurer had agreed by contract. Such a liberal construction of a statute is justified only when a statute is remedial in nature. We find this argument equally without merit.

To begin with, it is clear that the prejudgment interest statute *is* a remedial statute entitled to liberal interpretation. As has been noted, the prejudgment interest statute is part of the RJA. Section 102 of the RJA specifically enunciates the construction which should be applied to provisions of that act:

"This act is remedial in character, and shall be liberally construed to effectuate the intents and purposes thereof." MCL 600.102; MSA 27A.102.

---

[3] The prejudgment interest statute has been construed to apply to the Michigan uninsured motorist fund. *Douglas v Secretary of State,* 32 Mich App 533; 189 NW2d 114 (1971). In *Douglas,* the Secretary of State argued, much as defendant insurer does here, that there was no statutory authority for awarding interest where the statutory limits of $10,000 under the Motor Vehicle Accident Claims Fund were paid. The *Douglas* Court rejected this argument, stating:

"It is the holding of this Court that prejudgment and postjudgment interest is recoverable from the Motor Vehicle Accident Claims Fund when the fund intervenes on behalf of an uninsured motorist, but is limited to payment of interest on that portion of a judgment which does not exceed the fund's statutory obligation." *Douglas, supra,* 538.

[4] Const 1963, art 1, § 10 provides: "No bill of attainder, ex post facto law or law impairing the obligation of contract shall be enacted."

Thus, there can be no question of the remedial nature of the interest statute.

Further, we are satisfied with the interpretation and rejection of defendant's constitutional contentions by the Court of Appeals in a similar case, *Cosby v Pool,* 36 Mich App 571; 194 NW2d 142 (1971), *lv den* 386 Mich 782, 783 (1972). In *Cosby,* defendant, unlike defendant here, acknowledged that the interest statute was generally applicable to its insurance policies. However, because the insurance policy in question had been issued prior to amendment of the interest statute in 1965,[5] the statute had no force and any retrospective application of the statute would be constitutionally infirm as an infringement on the right of freedom of contract.

In dismissing defendant insurer's constitutional objections, the *Cosby* Court noted that the amendment of the prejudgment interest statute related to remedies or modes of procedures. *Ballog v Knight Newspapers, Inc,* 381 Mich 527; 164 NW2d 19 (1969). Citing precedent of this Court,[6] the Court in *Cosby* determined that:

"A statute which changes the substance of contracts cannot be made retroactive, but if the statute changes only a remedy, it can be made retroactive." *Cosby, supra,* 576.

The Legislature, therefore, may modify the remedy for enforcement of a contract without impairing its obligation. The *Cosby* Court concluded and held as follows:

---

[5] The 1965 amendment to the interest statute changed the date upon which interest would begin to accrue from the date of judgment to the date of filing the complaint. 1965 PA 240.

[6] See *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963); *Guardian Depositors Corp v Brown,* 290 Mich 433; 287 NW 798 (1939).

"This Court thus finds no merit in the defendant insurance company's constitutional contention. The amendment to the statute in contention was remedial or procedural. It in no way affects the substantive interests of the two parties. *Therefore, the amendment has the effect of becoming a party of the contract and replaces the clause as written.*" (Emphasis added.) *Cosby, supra,* 578.

While the main thrust of the *Cosby* holding pertains to the retroactive application of the prejudgment interest statute, its rationale is equally pertinent here. Since the interest statute merely modifies a remedy and not a substantive contractual right, there can be no constitutional objection to its application to insurance policies. Thus, the statutory remedy becomes a part of the insurance contract, replacing any contractual provisions that are contrary.

As is readily evident, defendant insurer continually relies on the language of its insurance policy as sacrosanct and in complete opposition to the interest statute. However, there is language in the insurance policy itself which may resolve the seeming conflict and incorporate by direct reference the interest statute into the insurance policy.

In boilerplate language near the end of the insurance contract, the following provision is found:

"Any provision of this policy which is in conflict with the statutes of the state wherein it is issued is hereby amended to conform to such statutes."

Since there is an obvious conflict between the provisions of this policy which provide for postjudgment interest only and the prejudgment interest statute which provides for interest from the date of filing the complaint, it may be considered

that this boilerplate language amends the insurance policy to conform with the mandate of the prejudgment interest statute.[7] This notion gains particular force when viewed in light of the hackneyed but oft-quoted judicial maxim that the language of an insurance policy should be strictly construed against the writer and the policy should

---

[7] We note that our interpretation of this boilerplate language in the insurance policy differs from that of the Sixth Circuit Court of Appeals in *Westchester Fire Ins Co v Ring Brothers Heating Co,* 491 F2d 711 (CA 6, 1974).

In *Westchester,* plaintiffs obtained a money judgment in a negligence action. According to the provisions of its insurance policy, defendant's insurer tendered the policy limits plus all postjudgment interest. Plaintiffs argued that they were entitled to interest from the date of filing the complaint. Plaintiffs' argument was based upon boilerplate language in the insurance policy, similar to the language in this case, which amended non-conforming policy provisions to the statutes of the state. Thus, the policy would be amended to provide for statutorily mandated prejudgment interest.

The *Westchester* court rejected plaintiffs' argument. Although reaching a contrary result, the *Westchester* court relied on *Cosby, supra.* The *Westchester* panel viewed the holding in *Cosby* as turning on contract interpretation. Since the insurance contract in *Cosby* called for the payment of interest "accruing on verdict or after judgment", it was sufficiently different from the *Westchester* contract which limited interest to that "which accrues after entry of judgment". The court found the following language in *Cosby* controlling, for purposes of its holding:

"An insurer can limit the risk it assumes. It follows that the insurer should be liable only for the interest that accrues on the amount of risk it has assumed. Otherwise, it would be paying interest on a risk it did not assume and for which it did not charge premiums." (Citations omitted.) *Cosby, supra,* 578-579.

With all due respect to the *Westchester* court, we view its interpretation as a misreading of *Cosby. Cosby* was not so much concerned with contract interpretation as it was in indicating that whatever contractual language existed would be amended to conform with the interest statute. This is clear from Judge FITZGERALD's holding:

"Therefore, the amendment has the effect of becoming a part of the contract and *replaces* the clause as written." (Emphasis added.) *Cosby, supra,* 578.

In addition, the *Westchester* court's reliance upon the "limitation of risk" language of *Cosby* is equally misplaced. The *Cosby* Court found insurer liable for prejudgment interest on its policy limits. The Court refused, based upon the limitation of risk language, to go one step further and find insurer liable for prejudgment interest on the entire judgment, $200,000, when it had limited its liability by contract to $100,000.

be interpreted in favor of the insured. *Hilburn v Citizens' Mutual Automobile Ins Co,* 339 Mich 494; 64 NW2d 702 (1954); *Pastucha v Roth,* 290 Mich 1; 287 NW 355 (1939). The Wisconsin Supreme Court has stated the proposition well:

"[The insurance company] was the drafter of this contract of insurance, the choice of language belonged to it. If an insurance company in drafting its policy fails to write a provision as to indicate with reasonable certainty what it means by the provision, it has no just cause to complain when that provision is given a reasonable construction contrary to its contentions." (Footnote omitted.) *McPhee v American Motorists Ins Co,* 57 Wis 2d 669, 682; 205 NW2d 152 (1973).

### III

Defendant Transamerica's concern seems to boil down to the following: An insurer limits its risks when it sets a certain policy limit. Any chargeable interest which causes the insurer to pay a sum in excess of this limitation is an intrusion upon the insurer's right and ability to contract. However, this notion runs contrary to the very concept and purpose of charging interest. Interest has been defined as follows:

"Interest and court costs are added to a judgment to recompense the prevailing party for the delay in payment of the money damages determined and to put back in his pocket some of the expense he incurs in instituting and prosecuting an action." *Waldrop v Rodery,* 34 Mich App 1, 4; 190 NW2d 691 (1971).

Furthermore, the notion clearly runs contrary to the Legislature's intent in enacting the prejudgment interest statute and is without foundation at common law.

The common-law rule regarding the payment of interest in excess of the policy limits in an automobile insurance policy has been enunciated as follows:

"[I]t has been established law for a long period of time that the insurer may be obligated to pay costs or interest on judgment recovered against the insured although these items may bring the total payment beyond the limits set in the policy." *Powell v T A & C Taxi Co,* 104 NH 428, 430; 188 A2d 654 (1963).

So deeply rooted is this principle at common law that almost every jurisdiction that has considered the question has followed the rule.[8]

The only issue, tangentially related to the present one, which remains unresolved at common law is not whether an insurer is liable for interest on the policy limits but whether the insurer is liable for interest on the whole judgment. The courts have split on this issue although the majority and modern trend is in favor of holding the insurer liable for interest on the whole judgment.[9] We note, however, that even those jurisdictions which

---

[8] For an exhaustive list of the state and Federal decisions regarding the common-law rule see 8 Appleman, Insurance Law and Practice, § 4899, pp 361-363. Only two states seem to have reached a contrary result. See *National & Providence Worsted Mills v Frankfort Marine Accident & Plate Glass Ins Co,* 28 RI 126; 66 A 58 (1907); *Munro v Maryland Casualty Co,* 48 NY Misc 183; 96 NYS 705 (1905). We note that neither the Rhode Island nor the New York decision involved an automobile insurance policy. Furthermore, there is some question regarding the continuing viability of the *Munro* decision. In *Cleghorn v Ocean Accident & Guarantee Corp, Ltd, of London,* 216 AD 342; 215 NYS 127 (1926), *mod on other grounds* 244 NY 166; 155 NE 87 (1926), a New York court allowed interest in excess of the policy limits of an automobile insurance policy.

[9] For a thorough discussion of this issue, see 76 ALR2d 983. Although there is some Michigan authority to the contrary, see, *e.g., Cates v Moyses,* 57 Mich App 405; 226 NW2d 106 (1975), *mod* 394 Mich 762; 228 NW2d 380 (1975); *Cosby, supra,* this Court has never fully addressed the issue whether an insurer should be held liable for interest on the entire judgment.

do not follow that majority rule still require the insurer to pay interest on the policy limits, even if the total payment exceeds those limits. *Standard Accident Ins Co of Detroit, Mich v Winget,* 197 F2d 97 (CA 9, 1952); *Crook v State Farm Mutual Automobile Ins Co,* 235 SC 452; 112 SE2d 241 (1960).

Although, strangely, the Michigan courts have been almost entirely silent on whether interest can be charged in excess of the policy limits of an insurance policy, there is some authority to support the proposition. In the context of a suit involving a life insurance policy, this Court opined and held as follows:

"The policy was for $2,000. The *ad damnum* clause in the declaration was $2,000. The judgment was for $2,-000 and interest amounting to $108. Defendant urges error because the judgment exceeds the *ad damnum* clause. We held in *Patrons' Mutual Fire Ins Co v Helli,* 232 Mich 446 [205 NW 169 (1925)], that interest may be recovered, although it is not claimed or demanded in the declaration, and we hold the allowance of interest was permissible even though it brought the judgment above the *ad damnum* clause." *Hollingsworth v Liberty Life Ins Co of Illinois,* 241 Mich 675, 679; 217 NW 908 (1928).

Lastly, although most of the judicial decisions treated in this section of our opinion involved so-called postjudgment interest, we see no reason why the same principle should not apply to pre-judgment interest. The Michigan Legislature has dictated that interest should accrue from the date of filing the complaint. If the legislative purpose was to compensate the prevailing party for the delay in payment of money damages and to cover the costs of litigation, then this legislative purpose can only be effectuated by the allowance of pre-

judgment interest, even if this interest exceeds the policy limits of an insurance contract.[10]

## IV

The result we reach today is fully supported by considerations of public policy. If we were to rule in favor of the insurer, the following would take place: the insured, not the insurer, would be responsible for the payment of the prejudgment interest in excess of the policy limits and, presumptively, interest on the entire judgment as well. Such a result would appear unconscionable.

We note that by the very terms of the insurance policy the insurer retained control over any investigation process, settlement or litigation. The insured had no control over the process and if the insured chose to act or attempted to settle of his own volition, he would run the risk of forfeiture of any rights under the policy. Many courts, in similar situations, have held that the insurer should be liable for interest on the policy limits or judgment because of this very element of control which the insurer wields over the settlement and litigation process. *United Services Automobile Ass'n v Russom,* 241 F2d 296 (CA 5, 1957); *Powell, supra; Crook, supra.*

As the Court of Appeals below pointed out, no

[10] We note that several jurisdictions have refused to allow prejudgment interest in excess of the policy limits in situations similar to the one in this case. See, *e.g., Factory Mutual Liability Ins Co of America v Cooper,* 106 RI 632; 262 A2d 370 (1970); *Laplant v Aetna Casualty & Surety Co,* 107 NH 183; 219 A2d 283 (1966). The decisions of these courts, however, ignore the long common-law tradition of allowing interest in excess of the policy limits and are at odds with the very purpose of allowing interest, *i.e.,* as a compensation to the prevailing party for the delay in payment. Further, if we were to follow the rationale of these decisions, we would subvert the unequivocal intent of the Legislature in enacting the prejudgment interest statute, to allow interest from the date of filing the complaint.

manifest injustice is committed by holding the insurer liable for prejudgment interest. The insurer had complete control over the $40,000 policy limits from April 17, 1974, the date of filing the complaint, until after September 9, 1976 when it tendered the $40,000 without interest. Even assuming that the insurer were required to set the funds aside from its general investment fund because of the pending litigation, the funds did not remain idle. The funds were invested. And, again, even assuming that the funds were invested in conservative short-term enterprises, the insurer certainly would not lose anything by paying the prejudgment interest but would probably retain a profit.

Payment of prejudgment interest not only compensates the prevailing party but also liability for prejudgment interest may act as an incentive to the insurer to promptly settle a meritorious claim. Without such an incentive, the insurer may refuse to settle a meritorious claim in hopes of forcing plaintiff to settle for less than the claim's true value. The insurer risks nothing. Even if protracted litigation results, the insurer will only be liable for its policy limits—all the while reaping a tidy sum from its investment of the policy limits.

Finally, even the insurance law commentators are highly critical of attempts by insurers to evade their responsibility for prejudgment interest. One such commentator has very forcefully noted:

"Since this part of the insured's liability is controlled by the time required for litigation, a matter largely under the control of the insurer, which by contract insisted upon this control, the courts as a matter of public policy should strike down any provision barring the insurer from being liable for prejudgment interest. Any other result allows the insurer to engage, with

impunity, in delaying tactics at the expense of its insured." 8 Appleman, Insurance Law and Practice (1979 Supp), § 4899, p 128.

Not only do we think that this comment is generally appropriate as to insurance policies but it even has more validity when a state statute, such as the prejudgment interest statute, mandates the payment of prejudgment interest.

CONCLUSION

Based upon the intent of the Legislature in enacting the prejudgment interest statute, interpretation of the insurance policy, and common-law and public policy considerations, we hold that an insurer is liable for prejudgment interest on that portion of a judgment representing the policy liability of the insurer.

Affirmed. Costs to appellee.

COLEMAN, C.J., and WILLIAMS and LEVIN, JJ., concurred with BLAIR MOODY, JR., J.

KAVANAGH, J. *(concurring in affirmance)*. We do not agree with Justice MOODY that there is a common-law right to interest in Michigan. Here the right to interest is purely statutory. *Solakis v Roberts,* 395 Mich 13, 21; 233 NW2d 1 (1975); *Motyka v Detroit, GH & M R Co,* 260 Mich 396; 244 NW 897 (1932); *Kermott v Ayer,* 11 Mich 181, 184 (1863).

We do agree that the prejudgment interest statute need not appear in the Insurance Code or the financial responsibility act to apply to defendant. While these laws regulate the practices of the insurance industry, they are not the exclusive government of it. Insurance companies are subject

to the general laws of this state as are all other business enterprises.

We adopt the reasoning of the Court of Appeals in *Cosby v Pool,* 36 Mich App 571; 194 NW2d 142 (1971), *lv den* 386 Mich 782, 783 (1972), and are satisfied that it refutes the claim that the prejudgment interest statute impairs the obligation of contracts and is accordingly constitutionally defective.

Justice MOODY observes that public policy prompts our disposition of these cases and we concur. A fuller exposition of the public policy argument is set forth in Judge WALSH's dissent in *Dittus v Geyman,* 68 Mich App 433; 242 NW2d 800 (1976).

FITZGERALD and RYAN, JJ., concurred with KAVANAGH, J.