Michael BALDER, et al., Respondents,

v.

Thomas W. HALEY, Respondent,

and

Midwest Family Mutual Insurance Company, formerly known as Minnesota Farmer's Mutual Insurance Company, Appellant,

and

Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Respondents.

No. C2-88-2639.

Court of Appeals of Minnesota.

June 13, 1989.

Review Denied July 27, 1989.

Jeffrey R. Brauchle, Holmes & Graven, Chartered, Minneapolis, for Michael Balder, et al.

John D. Quinlivan, Quinlivan, Sherwood, Spellacy & Tarvestad, P.A., St. Cloud, for Thomas W. Haley.

Henry A. Cousineau, Jr., Mark A. Gwin, Cousineau, McGuire, Shaughnessy & Anderson, Minneapolis, Midwest Family Mutual Ins. Co.

Tom Togas, Michael D. Pederson, Messerli & Kramer, Minneapolis, for Sieben, Grose, Von Holtum, McCoy & Carey, Ltd.

Heard, considered and decided by PARKER, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

PARKER, Judge.

This supplemental garnishment action arises from a personal injury action that was tried to a jury beginning in January 1985. *See Balder v. Haley*, 399 N.W.2d 77 (Minn.1987). The trial court concluded that appellant Midwest Family Mutual Insurance Company was liable for interest on the entire judgment and granted summary judgment in favor of judgment creditors Michael and Zita Balder and intervenor Sieben, Grose, Von Holtum, McCoy and Carey, Ltd. (Sieben). We affirm.

## FACTS

The action underlying this garnishment proceeding involved a gas water heater that leaked gas and exploded, injuring Michael Balder. Following an eight-week jury trial, respondent Thomas Haley was found to be 35 percent at fault. Michael Balder was found to be 20 percent at fault. Balder's damages were found to be $2,250,-000. *See Balder*, 399 N.W.2d at 78–80.

At the time of the accident, appellant Midwest Family secured Haley under a

homeowner's policy which provided up to $50,000 in liability coverage. Prior to trial, Haley's attorney repeatedly offered the policy limits in exchange for a *Pierringer* release. *See Pierringer v. Hoger*, 21 Wis. 2d 182, 124 N.W.2d 106 (1963); *see also Frey v. Snelgrove*, 269 N.W.2d 918 (Minn. 1978). None of these offers was accepted.

After the Minnesota Supreme Court upheld the jury's verdict, judgment was entered in favor of the Balders in the amount of $2,293,260.15, which included the original judgment reduced by Michael Balder's percentage of fault, costs, disbursements and interest on the entire judgment. The Balders commenced this garnishment action against Midwest Family on June 1, 1987. The garnishment summons stated the unpaid balance to be in the amount of $2,293,260.15 plus interest from February 27, 1984. Midwest Family sent a draft in the amount of $35,063.31 to the Balders, which represented the remaining policy limits. (Another defendant found not to be at fault had previously garnished its costs and disbursements from Midwest Family in the amount of $14,936.69.) The Balders returned the $35,063.31 draft because it contained neither the accumulated interest on the entire judgment nor costs. They then filed a supplemental complaint against Midwest Family.

On May 2, 1988, the trial court issued an order for a statutory charging lien pursuant to Minn.Stat. § 481.13 (1986) in the amount of $238,686.04 on behalf of Sieben for legal fees, costs and disbursements. Sieben then intervened in this garnishment proceeding.

All parties to this garnishment action brought motions for summary judgment based on the policy language. The trial court granted summary judgment in favor of the Balders as creditor for $57,671.41 in costs and $578,382.61 in accrued post-judgment interest totaling $671,117.33. This determination was based on Section II of the insurance policy, which states that the company will pay "interest on the entire judgment which accrues after entry of the judgment and before we pay or tender or deposit in court that part of the judgment which does not exceed the limit of liability that applies." The trial court found that Midwest Family had not made an effective tender and therefore was obligated to pay interest on the entire judgment until an effective tender was made. Additionally, the court granted summary judgment in favor of Sieben for the full amount of its attorney fees. Finally, the court found that prejudgment interest on the judgment was not a cost that could be assessed against Midwest Family. Midwest Family appeals from the trial court's summary judgment in favor of the Balders, and the Balders appeal the trial court's determination with regard to the prejudgment interest.

## ISSUES

1. Did Midwest Family's pretrial offers to pay the policy limits meet the requirement of legal tender when the offers were conditioned upon execution of a *Pierringer* release?

2. Did Midwest Family tender the amounts due and owing so as to toll its obligation to pay post-judgment interest on the entire judgment when a draft was sent to the Balders that did not include costs or interest?

3. Should public policy considerations require an insurance company to pay prejudgment interest?

4. Did the trial court err in calculating post-judgment interest on an amount that included both the judgment and prejudgment interest?

## DISCUSSION

On appeal from a summary judgment, this court's scope of review is limited to determining whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). The parties agree on all the pertinent facts; thus, we must determine whether the trial court correctly applied the law to the facts.

## I

■ Midwest Family's policy with Haley provides that in addition to the policy's liability limits, Midwest Family will pay

> interest on the entire judgment which accrues after entry of the judgment and before we pay or tender or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

Midwest Family argues that it repeatedly offered to pay the policy limits in exchange for a release of Haley's liability. Midwest Family characterizes the Balders' refusal to accept payment as a "gamble that a jury would find some small percentage of fault against the deeper-pocketed defendants." The Balders argue that Midwest Family did not make an unconditional tender and is not entitled to the benefits of a proper tender which would stop the accrual of interest.

The term "tender" is defined as

> [t]he act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due in satisfaction of such claim or demand without any stipulation or condition.

Black's Law Dictionary 1315 (5th ed. 1979).

An essential characteristic of tender is the unconditional nature of the offer to pay. *Id.* It is uncontested that all of Midwest Family's offers to pay the policy limits were conditioned on a release of Haley's liability. This is not the unconditional offer required to confer the benefits of tender on Midwest Family.

Since before the turn of the century, it has been held that tender "is not effectual as such if it be coupled with such conditions that the acceptance of it, as tendered, will involve an admission by the party accepting it that no more is due." *Moore v. Norman,* 52 Minn. 83, 86, 53 N.W. 809, 810 (1892); *see also Northern Pacific Railway Co. v. Goss,* 203 F. 904 (8th Cir.1913). As the Minnesota Supreme Court recognized in *Moore,*

> [t]he debtor has no right to the benefit of a tender, as having the effect of a payment, when it is burdened with such con-

dition that the creditor cannot accept the money without compromising his legal right to recover the further sum which he claims to be due.

*Id.,* 52 Minn. at 86, 53 N.W. at 810.

Midwest Family argues that it could not ethically have made an unconditional offer to pay the policy limits without obtaining a release of Haley. The policy, however, provides that Midwest Family can stop the accrual of interest by depositing the policy limits in court. Given the size of the jury's award, it should have been foreseeable that Balder's damages would exceed the $50,000 policy limits. We hold that the trial court did not err in concluding the tenders were conditional and hence insufficient to toll the running of post-judgment interest.

We recognize that the result we reach may appear harsh. An insurer which wrote a $50,000 policy is being held liable for more than $670,000 in post-judgment interest. This result could have been avoided, however, if Midwest Family had deposited what it owed in court.

## II

■ Midwest Family contends that it should not be liable for post-judgment interest that accrued after it sent the Balders a draft for $35,063.31. Since this amount was what was left of the $50,000 liability limit, Midwest Family argues that it fulfilled its obligation to tender "the limit of liability that applies" under its contract of insurance with Haley.

To be an effective tender, a payment of money must include all amounts owed to the creditor, including debt, interest and costs. *See Stibal ex rel Stibal v. Carland,* 381 N.W.2d 855, 858 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. April 24, 1986). The draft sent by Midwest Family did not include post-judgment interest, and it was not an effective tender under *Stibal.*

Midwest Family argues that *Stibal* can be distinguished based on the language of the Midwest Family interest-on-judgments clause compared to the language of the interest-on-judgments clause in *Stibal.* The clause in *Stibal* reads:

2. Personal liability claim expenses: This company will pay:

&ast; &ast; &ast; &ast; &ast; &ast;

   c. All interest on the entire amount of any judgment which accrues after entry of the judgment and before this company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of this company's liability *thereon* &ast; &ast; &ast;.

*Stibal,* 381 N.W.2d at 856 (emphasis added).

The Midwest Family clause reads:

We cover the following in addition to the limits of liability:

1. Claim Expenses. We pay:

&ast; &ast; &ast; &ast; &ast; &ast;

   d. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability *that applies.*

(Emphasis added).

Midwest Family argues that because its policy does not use the word "thereon," which this court found ambiguous in *Stibal,* its policy is not ambiguous. They further argue that the phrase "that applies" used in the Midwest Family policy instead of "thereon" unambiguously refers to the policy limits, not the judgment.

We do not agree. As in *Stibal,* the policy's language is susceptible to different meanings. "The limit of liability that applies" could refer to the limit of Midwest Family's liability on the judgment, including interest and costs, or it could refer to the policy limits, as Midwest Family contends. Ambiguous language in an insurance policy must be given a meaning favorable to the finding of insurance coverage. *Nordby v. Atlantic Mutual Insurance Co.,* 329 N.W.2d 820, 822 (Minn.1983). If Midwest Family had meant to provide that its obligation to pay interest on the entire judgment ended when it tendered *the limit of liability for the applicable coverage as stated in the policy declarations,* it should

have said so in some such unequivocal language.

## III

   The Balders, citing Michigan case law, contend that Midwest Family should be obligated to pay prejudgment interest on public policy grounds. *See Denham v. Redford,* 407 Mich. 517, 287 N.W.2d 168 (1980). *Denham,* however, involved a purely statutory right to prejudgment interest. *See id.* at 537, 287 N.W.2d at 175 (Kavanagh, J., concurring). The Minnesota Legislature has not enacted such a statute.

More important, Midwest Family's policy does not provide for payment of prejudgment interest. "Insurance policies are similar to other contracts; they are matters of agreement by the parties and the function of a court is to determine what the agreement was and, enforce it." *Fillmore v. Iowa National Mutual Insurance Co.,* 344 N.W.2d 875, 877 (Minn.Ct.App.1984). The parties to the insurance contract did not agree that Midwest Family would be obligated to pay prejudgment interest. Absent a contractual or statutory provision requiring such payment, this court will not impose that obligation.

## IV

   As an initial matter, the Balders contend that Midwest Family is raising the issue of calculation of post-judgment interest for the first time on appeal. This court's review is necessarily limited to issues which the record establishes were actually raised in, and decided by, the trial court. *Thayer v. American Financial Advisers, Inc.,* 322 N.W.2d 599, 604 (Minn. 1982). On the other hand, this court retains the constitutional power to consider an issue on appeal in the interests of justice. *See Swartwoudt v. Swartwoudt,* 349 N.W.2d 600, 602 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984). In the trial court, Midwest Family took the position that *no* post-judgment interest should be allowed. This preserves Midwest Family's right to contest the trial court's calculation of post-judgment interest.

Midwest Family argues that the trial court erred in holding it liable for post-judgment interest on that part of the judgment which includes prejudgment interest. Midwest Family is not ultimately liable for paying prejudgment interest; neither is Midwest Family liable for damages beyond the policy limits. Midwest Family is, however, liable for post-judgment interest on the *entire judgment*, which is composed, in large part, of items for which Midwest Family is not ultimately liable. If prejudgment interest is part of the entire judgment, Midwest Family must pay post-judgment interest on it, even though Midwest Family is not liable for the prejudgment interest.

Prejudgment interest is not interest in the traditional sense of the word; "it is an element of damages awarded to provide full compensation by converting time-of-demand (either by written settlement offer or commencement of action) damages into time-of-verdict damages." *Lienhard v. State*, 431 N.W.2d 861, 865 (Minn.1988). Prejudgment interest on pecuniary losses is included as part of a general damage award in order to compensate the injured party fully. *Id.* (citing *Bond v. City of Huntington*, 166 W.Va. 581, 599, 276 S.E. 2d 539, 548 (1981)). Such interest attaches to the verdict an additional compensatory sum. *Lienhard*, 431 N.W.2d at 865. In *Lienhard* the Minnesota Supreme Court held that prejudgment interest, as part of a judgment against the state, is subject to the limitations of Minn.Stat. § 3.736, subd. 4 (1978). *Id.* at 865.

Midwest Family's policy provided that it would pay interest on the entire judgment. Because prejudgment interest constitutes part of the judgment, the trial court did not err in requiring Midwest Family to pay post-judgment interest on the portion of the judgment that included prejudgment interest.

## DECISION

Midwest Family failed to make an effective tender to stop the accrual of interest. The trial court correctly calculated post-judgment interest due. Midwest Family is not obligated to pay prejudgment interest.

Affirmed.