*ALLSTATE INDEMNITY COMPANY*
*an Illinois corporation, licensed to and*
*conducting business in Arizona*
Plaintiff-Appellee

*vs.*

*Suzie Holly BLACKGOAT and Lanison Blackgoat*
*as guardians for the minor children of*
*Carl Holly and Valerie Little Holly*
Defendants-Appellants

In the Supreme Court of the Navajo Nation

No. SC-CV-15-01

May 20, 2005

R. Dennis Ickes, Esq., Salt Lake City, Utah, for Appellants.

James E. Ledbetter,Esq., and Justin G. Vaughn, Esq., Cottonwood, Arizona, for Appellee.

Before FERGUSON, Acting Chief Justice, and J. BENALLY, Associate Justice (by designation)

This opinion follows our request for briefing on several issues in a previous opinion. Based on our discussion below, we remand for further proceedings.

## I

The relevant facts for this opinion are as follows. An accident occurred on U.S. Highway 160 that killed Carl and Valerie Little Holly. Allstate, an insurance company, filed an interpleader action in the Kayenta District Court to distribute proceeds from a contract it had with its insured to pay tort damages. According to Allstate, the contract, which neither party submitted to the Kayenta District Court or this Court, caps its responsibility at $30,000. In its complaint Allstate requested that the Kayenta District Court allow it to deposit the funds in the court. The interpleader complaint named, among other parties, the Blackgoats, who had previously submitted a claim to Allstate on behalf of the Holly's minor children. The Blackgoats filed an answer which included a counterclaim for pre-judgment interest against Allstate. Several months later, Allstate submitted the $30,000 pursuant to an order of the court. The court denied the Blackgoats' request for pre-judgment interest, and they appealed to this Court.

On appeal, we reversed the Kayenta District Court and held that pre-judgment interest should be awarded. We specifically held that the Navajo Common Law doctrine of *nályééh* requires the award of pre-judgment interest as an element of tort damages so that there "are no hard feelings." *Allstate v. Blackgoat*, 8 Nav. R. 627, 636 (Nav. Sup. Ct. 2005). We requested that the parties discuss what interest rate was appropriate. They filed several documents with this Court. In addition to discussing the actual question we presented, both parties question elements of our opinion. Further, Allstate raises several other issues, including our subject matter jurisdiction to award interest above the

contractual cap. We held oral argument on the issues raised, and now issue this opinion.

## II

The issues in this case are 1) whether the Navajo Nation courts lack subject matter jurisdiction over a claim to pre-judgment interest beyond the cap established in an insurance contract between a non-Indian insurance company and a tribal member when the accident occurs on a U.S. highway within the Navajo Nation, 2) if there is subject matter jurisdiction, whether a two justice panel is inappropriate, 3) if there is subject matter jurisdiction, whether this Court should grant only prospective effect to an opinion issued before appellate briefing in a subsequent case, 4) if there is subject matter jurisdiction, whether pre-judgment interest above the contractual cap in an insurance contract may be awarded, and 5) if there is subject matter jurisdiction, whether this Court may make a ruling on pre-judgment interest when facts necessary to that ruling have not been found by the trial court.

## III

Though our request for briefing only asked for a discussion of what rate of pre-judgment interest is appropriate, Allstate presented several other arguments concerning our previous opinion. Though not explicitly asserted as a motion for reconsideration, the arguments raised deserve our attention. We consider each one in turn.

## A

First and most significant among Allstate's arguments is that our Navajo Nation courts lack subject matter jurisdiction under federal Indian law to even consider the Blackgoats' request for pre-judgment interest. As we understand Allstate's argument, U.S. Supreme Court case law, as interpreted by recent Ninth Circuit opinions, *Ford Motor Co. v. Todecheene*, 394 F.3d 1170 (2005) and *Wilson v. Marchington*, 127 F.3d 805 (1997), bars our consideration of the Blackgoats' claim because it is "extra- contractual," that is, above and beyond the $30,000 cap in its contract with its insured.[1] According to Allstate, we must fulfill the test announced in *Montana v. United States*, 450 U.S. 544 (1981) to establish

---

1  As stated above, neither party submitted the contract to the Kayenta District Court or this Court. The Blackgoats appear to have believed throughout the litigation that the contract caps Allstate's liability at $30,000. We assume, for purposes of this discussion, that the contract indeed caps Allstate's liability at $30,000.

jurisdiction.[2] Under that test, for tribal jurisdiction to attach there must be either 1) a consensual relationship between Allstate and the Navajo Nation or a Navajo tribal member, or 2) its conduct must threaten or have some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. *Id.* at 565-66. Allstate focuses on the first exception, contending that jurisdiction is limited to the scope of the contractual relationship with its Navajo insured, which is capped at $30,000.

Assuming for purposes of this analysis that U.S. Highway 160 is the type of right-of-way that requires a *Montana* analysis, *see supra*, n. 1; *Strate v. A-1 Contractors*, 520 U.S.438, 455-56 (1997) (holding tribal court jurisdiction over accident on state right-of-way requires fulfillment of *Montana* test); *Marchington*, 127 F.3d at 813-14 (applying *Montana* test to U.S. highway passing through Blackfeet Reservation in Montana), there is a "consensual relationship" in this case: Allstate's contract with its insured, a Navajo tribal member. Further, Allstate itself filed the interpleader action in the Kayenta District Court, and therefore it sought the Navajo Nation's jurisdiction over this case. The only question is whether the scope of the Navajo Nation's jurisdiction is narrowly restricted to the distribution of the $30,000, with no ability to otherwise decide the obligations Allstate may have under the contract to those injured in an accident caused by Allstate's insured.

We do not believe our jurisdiction under the *Montana* test is so restricted. Though Allstate states that the $30,000 cap in the contract is the limit of its consent to Navajo Nation jurisdiction, the actual U.S. Supreme Court test allows jurisdiction if the asserted jurisdiction has a "nexus" to a consensual relationship. *See Atkinson v. Shirley*, 532 U.S. 645,656 (2001). The obligation to pay anything to the Blackgoats arises out of the contract. Jurisdiction over the question whether the cap provision precludes an award of prejudgment interest clearly has a nexus to the contract itself. Through its contract and its choice to file its action in the Navajo Nation courts to distribute proceeds under the contract to the Blackgoats and others, Allstate necessarily submits itself to a

2 Allstate's brief makes no mention of the location of the accident within the Navajo Nation, arguing, apparently, that the status of the land where the accident occurred is irrelevant. The fact that the accident occurred on U.S. Highway 160 came out at oral argument. We questioned both sides at oral argument whether our opinion in *Dale Nicholson Trust v. Chavez*, 8 Nav. R. 417 (Nav. Sup. Ct. 2004), affected this case. The discussion by both sides demonstrated a lack of understanding of that case and its identification of the exclusion provision of the Treaty of 1868 as the source of absolute jurisdiction over non-Indians on tribal lands within the Navajo Nation. *See Id.* at 428–29. Regardless of Ninth Circuit case law, which has not considered the Treaty of 1868's effect on jurisdiction, this Court has held that the Treaty negates the *Montana* test on tribal land. *See id.* We state again that the *Montana* test is only relevant within the Navajo Nation on non-Indian owned fee land or on certain types of rights-of-way. *See id.* It is only the fact that the accident occurred on a federal right-of-way that makes the *Montana* test relevant to our jurisdiction over this case. *See infra*, at 4.

full examination of its obligations arising from that contract, whether or not its obligations are ultimately found to be restricted to the strict letter of a provision in the agreement.

Even assuming *Todecheene* and *Marchington* were binding, *cf: Weatherford ex rel. Michael v. State*, 81 P.3d 320, 324 (Ariz. 2003) (state court not bound by federal circuit court interpretation of federal law); *Bishop v. Burgard*, 764 N.E.2d 24, 33 (Ill. 2002) (same), we find nothing in those cases to dispute the conclusions reached here. Their facts are significantly different. *Marchington* concerned a car accident between a tribal member and a non-Indian with no connection to the tribe. *See* 127 F.3d at 807. There was no consensual relationship at all to examine, and the Ninth Circuit merely rejected arguments that the second *Montana* exception was met. *See Id.* at 814-15. *Todecheene* concerned a products liability case against the manufacturer of a vehicle by a Navajo family, with the consensual relationship being a finance agreement between the Nation itself and a corporate subsidiary of the manufacturer. 394 F.3d at 1179-1181. Based on those facts, the court ruled that there was no nexus between the finance agreement and the claim. *Id.* at 1181. The unique circumstances of each case preclude direct application under the fact-intensive *Montana* test. We therefore hold that our courts have jurisdiction over the question of Allstate's obligations to pay pre-judgment interest.

B

Allstate next contends that a two justice panel is inappropriate in this case. Curiously, Allstate does not mention our opinion in *Benally v. Mobil Oil*, 8 Nav. R. 365 (Nav. Sup. Ct. 2003), where we held such panels valid in certain circumstances. The omission of that case is especially curious because Allstate's counsel was Mobil Oil's counsel in that case, and asserted the same argument, that Section 301(a) of Title 7 of the Navajo Nation Code required three justices in every appeal. *See Id.* at 368. We rejected that argument then, *Id.* at 368–69, and reject it now. Consideration of this case before the present panel began during the administration of the late Chief Justice Claudeen Bates Arthur. When she became unavailable due to her illness, the current panel remained. Based on our discussion in *Benally*, *see Id.* at 367–69, we see nothing inappropriate in considering this case with two justices.

C

Allstate next argues that this Court should not have applied our opinion in *Singer v. Nez*, 8 Nav. R. 122 (Nav. Sup. Ct. 2001), to this appeal, as we issued it after Allstate filed its interpleader. Allstate believes that we should give *Singer* only prospective effect, that is, that it should only be applied to cases filed after the opinion. Again, Allstate fails to cite our case law, as we discussed the prospective/retroactive distinction in *Fort Defiance Housing Corp. v. Allen*, 8 Nav. R. 492 (Nav. Sup. Ct. 2004). In Allen, we stated that as a general rule our opinions apply to all cases pending in our Court or the lower courts or administrative agencies at the

time they are issued. *Id.* at 499 n.4. We recognized our ability to apply a rule in an opinion only prospectively, as consistent with Navajo Common Law notions of due process as informed by *k'é. Id.* We applied this authority in *Allen* itself by allowing the appellant tenant to file an appeal despite filing it beyond the appeal time set out in the forcible entry and detainer statute, because our rule of appellate procedure relied upon by the appellant set a different time. *See id.*

Though we have the authority to apply our opinions only prospectively, we decline to do so in this case. Unlike the situation in *Allen*, there were no contradictory rules concerning pre-judgment interest under Navajo law at the time Allstate filed its action. If there were, it might warrant some adjustment in the interest of fairness to the current parties. There was simply no stated law, however, presenting an open question whether pre-judgment interest was appropriate. In the absence of stated law on an issue, the parties are bound by whatever rule we announce, whether in the current case or another pending case. Further, we issued *Singer* before appellate briefing began, and the parties had ample time between their initial briefs and our opinion (almost four years) to file supplemental briefs on the effect of that case. As Allstate did not discuss *Singer* until its response to our opinion in ths case, we will not relieve it from its application. For these reasons, we decline Allstate's request.

D

In its last significant argument for reconsideration, Allstate requests that we look again at the rule announced in our opinion that pre-judgment interest must be awarded to an injured party against an insurance company. Allstate contends this conclusion was improper, because no award may be made beyond the $30,000 cap in its contract. Instead, Allstate contends that its insured is responsible for any pre-judgment interest above the $30,000, and the Blackgoats should therefore sue him for the interest.

We decline to reverse our previous ruling, and state again that pre-judgment interest must be paid by the insurance company, regardless of contractual provisions capping liability. Our conclusion is consistent with other jurisdictions that have recognized an obligation by an insurance company to pay pre-judgment interest to an injured party regardless of contractual caps. Indeed, some jurisdictions have awarded pre-judgment interest beyond contractual liability caps by ruling that such contractual limits may be overridden by public policy considerations. *See Hughes v. Harrelson*, 844 P.2d 1106, 1106-1108 (Alaska 1993); *Denham v. Bedford*, 287 N.W.2d 168, 174-75 (Mich. 1980); *Potomac Insurance Co. v. Howard*, 813 S.W.2d 557, 558 (Tex. App.- Houston [14th Dist.] 1991) (uninsured motorist claim). Under that analysis, the strong public policy of the Navajo Nation manifested in our Navajo Common Law concept of *nályééh* compels us to award pre-judgment interest despite the liability limit. Under *nályééh*, injured parties should be compensated fully so that there are no hard feelings. As we stated in our previous opinion, delayed compensation creates hard feelings, as

the injured loses the time value of the money they are due. Strong public policy considerations compel us to award pre-judgment interest against the insurance company regardless of the contractual cap, particularly, as in this case, where the insurance company controls settlement discussions and any subsequent litigation.

## E

We do make one adjustment to the time period for which pre-judgment should be awarded. In our first opinion in this case, we held that pre-judgment interest should accrue from the time the Blackgoats made their claim to Allstate up to the time Allstate actually deposited the funds with the Kayenta District Court. *Allstate*, 8 Nav. R. at 637. Both sides object to this time period in their briefs. The Blackgoats urge a longer time period, while Allstate wants the period to end at the time of the filing of the interpleader. Our interpleader rule does not require permission from the court to submit the funds, but requires that they be submitted to perfect the interpleader action. Navajo Rules of Civil Procedure 22(a)(1). Rule 67(a) of Navajo Rules of Procedure requires, however, that a party seeking "the disposition of a sum of money" ask for leave from the court to deposit the funds. Reading these two provisions together, Allstate could not have unilaterally deposited the funds with the court. We therefore amend our previous holding and set the time at which Allstate's responsibility to pay pre-judgment interest ended at the time of its request to deposit the funds. In this case, that was at the filing of its complaint. *See* Complaint in Interpleader, Index Listing No. 1, ¶ 19 (requesting court order to deposit the funds).

## IV

We finally turn to the merits of the pre-judgment interest question. In our previous opinion in this case, we requested briefs from the parties concerning what rate of interest should be applied. *Allstate*, 8 Nav. R. at 367. We suggested that the method identified in *Singer* was appropriate, which looks to the rate of return on investments by the insurance company. *Id.* The Blackgoats submitted data they claim show the rate of return Allstate received during the relevant time period. At oral argument, Allstate mentioned an Arizona state law which mandates that certain money be set aside for claims separate from an insurance company's other funds. Allstate asserts that it received no interest from these funds.

Though we intended to set a rate in this Court, after further review and the arguments of the parties, we conclude that findings of fact by the Kayenta District Court are necessary. We are not a fact-finding tribunal, but an appellate one. Consequently, we do not hold trials and make findings of fact. When further findings are required, we have remanded the case to the lower court for further proceedings. *See Navajo Nation v. Badonie*, 8 Nav. R. 507, 509 (Nav. Sup. Ct. 2004) (criminal trials); *Burbank v. Clarke*, 7 Nav. R. 368, 372 (Nav. Sup. Ct. 1999) (civil cases). Though this will delay an award of pre-judgment interest, we have no

alternative but to remand the case to the lower court, as several key findings of fact are necessary.

On remand, the Kayenta District Court must hold a hearing concerning the interest rate. The main question is what rate is reasonable during the time period between the date of the first claim submitted by the Blackgoats to when Allstate requested that the court allow it to submit the funds. On further review of the approach announced in *Singer*, we modify our previous opinion in one significant way. In *Singer*, we suggested the use of insurance company return rates based on a theory of pre-judgment interest that emphasized punishment for the insurance company's delay in paying the claim: "If the concept is to take the interest earned by the person who holds the [money] bag to deprive [it] of the benefit of holding money when it should have been paid out, then that would be a good approach to the problem." 8 Nav. R. at 131. However, as our previous opinion in this case makes clear, pre-judgment interest is not awarded to punish the holder of the money, but to fully compensate the injured. *Allstate*, 8 Nav. R. at 636. Therefore, as punishment is not the basis for the award, the rate earned by the insurance company is not the absolute measure of what the injured should receive. Instead, the correct focus is the interest rate the injured would have received had he or she had use of the money. The actual rate of return on Allstate's different funds therefore does not define the rate in this case. Instead, the Kayenta District Court should hear testimony on what rates were available to the Blackgoats during the relevant period, and decide on a reasonable rate, taking into account rates Allstate had available to it, as well as rates available generally.

## V

Based on the above, we REMAND this case to the Kayenta District Court for further proceedings, as outlined in this opinion.