GEORGIA-PACIFIC CORPORATION v CENTRAL PARK NORTH CO

Docket Nos. 54615–54616. Argued April 2, 1974 (Calendar No. 4).—
Decided April 29, 1975.

Georgia-Pacific Corporation, Bestwall Gypsum Division, assignee of Bob Ryan, Inc., brought an action against Central Park North Co., American Casualty Company, Hollenbeck Drywall, Inc., and Hollenbeck & Sather, Inc., for foreclosure of two mechanics' liens, on buildings nos. 1 and 2 of an apartment complex of six interconnected buildings belonging to Central Park North Co. Notices of intent to claim liens on buildings nos. 1 and 2 were served within 90 days of first furnishing of materials for them, but more than 90 days after materials were first furnished for buildings nos. 4 and 5. The Wayne Circuit Court, Thomas J. Foley, J., credited Central Park North with an amount paid by the general contractor which it determined had been paid on account of materials for buildings nos. 1 and 2, and entered a judgment for plaintiff for the difference. The trial court also found that Bob Ryan, Inc. contracted with Hollenbeck Drywall to furnish materials on an individual per building basis, that the buildings on the project were separate and divisible, and that the notices of intent to file liens against the buildings nos. 1 and 2 were timely served within 90 days of the first deliveries to those buildings. The Court of Appeals, J. H. Gillis, P. J., and McGregor and Borradaile, JJ., reversed in part and affirmed in part (Docket Nos. 11930–11933). Plaintiff appeals. Central Park North argues that the liens are void for two reasons: a) Bob Ryan, Inc., was acting in bad faith in not reducing the amount claimed in the liens by the amount paid by the general contractor; and b) the notices of intent to claim the liens were not timely served because they were served more than 90 days after materials were first delivered to buildings nos. 4 and 5 of the complex. *Held:*

1. The amounts that the trial court determined had been paid on account of buildings nos. 1 and 2 were not paid until after notices of intent to claim lien were served, and including

REFERENCES FOR POINTS IN HEADNOTES

[1, 4] 53 Am Jur 2d, Mechanics' Liens §§ 234, 235.

[2, 3] 53 Am Jur 2d, Mechanics' Liens § 19 *et seq.*

them in the amounts claimed in the notices was not inaccurate at the time. Although Bob Ryan was in error in not subsequently reducing the amount claimed, the trial court apparently did not find bad faith and there is not sufficient evidence in the record to support a finding of bad faith.

2. The Court of Appeals erred in finding that there was a single contract for furnishing materials to a single project where the evidence before the trial court supported a finding that Bob Ryan contracted to furnish materials on a per building basis and that the buildings were separate and divisible. The cases cited by the Court of Appeals do not support its conclusion that one who furnishes materials for separate buildings under a single contract may not have separate liens upon each of the buildings and the Supreme Court is not convinced that the lien statute precludes separate liens. However, the case need not be decided on this basis because there were separate contracts.

3. Notices of intent to claim the liens against buildings nos. 1 and 2 were served within 90 days of first delivering the materials to those buildings and thus were timely served and fulfilled their purpose of alerting the owners of Central Park North to the possibility of liens, so that they could protect themselves.

Reversed and judgment of trial court affirmed.

43 Mich App 348; 204 NW2d 321 (1972) reversed.

1. MECHANICS' LIENS—NOTICE OF LIEN—EXCESSIVE CLAIM—BAD FAITH.

A statement of account filed with a mechanics' lien was not made in bad faith because it made an excessive claim in that a certain amount paid was not credited on the account where the payment which should have been credited was not made until after the statement was filed so that it was not inaccurate as to that payment at that time, where the trial court did not find that the error in failing to reduce the claim after the payment was made in bad faith, and where there is not sufficient evidence in the record to support a finding of bad faith.

2. MECHANICS' LIENS—STATUTES—CONSTRUCTION—REMEDIAL STATUTE —SUBCONTRACTORS—MATERIALMEN—LABORERS.

The mechanics' liens act is a remedial statute intended to benefit and protect subcontractors, materialmen, and laborers and should be construed liberally in order to carry out the intent of the Legislature (MCLA 570.27).

3. MECHANICS' LIENS—MATERIALMEN.

The intent of the Legislature when it amended the mechanics'

liens act in 1897 and the effect of decided cases was to extend rather than restrict the rights of mechanics and materialmen in filing liens, with the object being to permit the filing of one lien rather than several on a number of buildings under one contract, but to permit the filing of a single lien is not to forbid the filing of separate liens (MCLA 570.1).

4. MECHANICS' LIENS—NOTICE—MATERIALMEN—INTENT TO CLAIM LIENS.

Notices were timely served and fulfilled their purpose of alerting the owners of the possibility of mechanics' liens, so that they could protect themselves by following the procedures set forth in a statute, where a materialman claimed separate liens against two buildings and served notices of intent to claim the liens within 90 days of first delivering materials to those buildings under separate per building contracts (MCLA 570.1).

*Wells, Wilmoth, Keating & Nitz, P.C.* (by *Daniel J. Henry, Jr.,* and *Donald P. Schuur),* for plaintiff.

*Dakmak, Gropman & Sinai, P. C.,* and *Liberson, Fink, Feiler, Crystal & Burdick P. C.* (by *Jeffery L. Schmier),* for defendant Central Park North Co. and American Casualty Company.

T. G. KAVANAGH, C. J. This is an action to foreclose a materialman's liens.

Central Park North Co. owns an apartment complex consisting of six interconnected apartment buildings which during construction were numbered from 1 through 6. Hollenbeck Drywall, Inc., now bankrupt, was the drywall subcontractor for the complex. Georgia-Pacific Corporation, plaintiff-appellant, sold drywall materials to Bob Ryan, Inc., a wholesaler. Bob Ryan sold and delivered drywall materials to Hollenbeck Drywall which were used in constructing the complex.

Bob Ryan began delivering materials to buildings #4 and #5 on May 26, 1965, and continued through June, 1965. Payments for those materials were made to Bob Ryan by means of promissory

notes which were then assigned by Bob Ryan to Georgia-Pacific.

On June 16, 1965, Bob Ryan was notified by Georgia-Pacific that it would no longer accept Hollenbeck's promissory notes in lieu of cash. On July 12 Bob Ryan began delivering materials to building #1.

On September 9, 1965, Bob Ryan began delivering materials to building #2.

On October 3, 1965, Bob Ryan served a notice of intent to file a mechanics' lien against building #1 for the value of materials furnished to it and followed the same procedure for building #2.

On October 14, 1965, shortly after the notices of intent to claim liens were served on Central Park North, the general contractor, Hamilton Construction Company, issued a check for the sum of $4,104 made payable jointly to Hollenbeck Drywall and Bob Ryan. The purpose of the check was not designated.

Hollenbeck Drywall negotiated the check solely upon its endorsement without notice to Bob Ryan.

On February 10, 1966, mechanics' liens against buildings #1 and #2 were filed by Bob Ryan in accordance with MCLA 570.5; MSA 26.285. These liens were subsequently assigned to Georgia-Pacific.

On March 24, 1966 Central Park North posted two bonds to vacate the liens resulting in the surety, American Casualty Company, becoming a codefendant.

Georgia-Pacific on January 13, 1967, instituted suit to foreclose its liens.

In February, 1967, the bank that had erroneously cashed the check made payable jointly to Hollenbeck Drywall and Bob Ryan paid Bob Ryan the $4,104. Bob Ryan sent this money to Georgia-

Pacific to apply to the oldest indebtedness of Hollenbeck Drywall, that is the money owed on the promissory notes held by Georgia-Pacific. Bob Ryan did not apply that money as a credit on the liens.

Judgment was entered in favor of Georgia-Pacific in the amount of $10,423.91. That amount included the lien of $3,575.22 against building #1 and the lien of $11,391.15 against building #2 minus $438.46[1] for an invoice that was disallowed, and also minus the payment of $4,104.

Central Park North argues that the liens are void for two reasons: a) Bob Ryan was acting in bad faith by not reducing the amount claimed in the liens by the $4,104 paid by Hamilton Construction and by the $438.96 which the trial court disallowed; and b) the notices of intent to claim the liens were not timely served.

## The Bad Faith Issue

The trial court held that the $4,104 was paid in response to a request for payment by Hollenbeck and was for materials used in buildings #1 and #2 and, therefore, should have been subtracted from the amount claimed by the liens. Accordingly, the trial court credited Central Park North with that amount and reduced the claim of $14,527.91 to a judgment of $10,423.91 plus interest.

Central Park North argues that Bob Ryan knowingly inflated the statements of accounts and liens filed on February 10, 1966, pursuant to MCLA 570.5; MSA 26.285, and was therefore, acting in

---

[1] The record indicates that the invoice was actually in the amount of $438.96; however, for the purpose of this lawsuit that 50 cents shall be disregarded under the familiar rule of *de minimis non curat lex.*

bad faith. For support Central Park North cites *Gibbs v Hanchette,* 90 Mich 657; 51 NW 691 (1892); *J E Greilick Co v Taylor,* 143 Mich 704; 107 NW 712 (1906); *Silverstein v Berman,* 254 Mich 478; 236 NW 840 (1931); *Equitable Trust Co v Detroit Golf & Recreation Co,* 260 Mich 606; 245 NW 531 (1932); *Currier Lumber Co v Ruoff,* 298 Mich 505; 299 NW 163 (1941); *Sacchetti v Recreation Co,* 304 Mich 185; 7 NW2d 265 (1943).

Each of the cases cited involved the voiding of a lien because the statement of account was held to have been made in bad faith. In the instant case when Bob Ryan filed its statements, it had not yet received the $4,104. Thus, including it in the amount due was not inaccurate as to the $4,104 at that time.

Although Bob Ryan was in error in not subsequently reducing the amount of its claim prior to trial, the trial court considered that error and the erroneous inclusion of one invoice in reaching judgment, and thus apparently did not find Bob Ryan's errors to have been made in bad faith.

In mechanics' liens cases the question of bad faith depends to a great degree on the facts and circumstances shown. *Sacchetti v Recreation Co,* 304 Mich 185, 192; 7 NW2d 265 (1943). From our reading of the record, we do not find sufficient evidence to support a conclusion that Bob Ryan's errors were made in bad faith so as to void the liens.

## The Timely Notice Issue

Section 1 of the mechanics' liens act, MCLA 570.1 *et seq.;* MSA 26.281 *et seq.,* requires, *inter alia,* that a materialman must serve on the owner a written notice of intent to claim a lien against a

building for any amounts unpaid for the materials furnished to that building. Such notice must be served "within 90 days after furnishing the first of such material". MCLA 570.1; MSA 26.281.

The trial court found from the evidence before it that Bob Ryan contracted with Hollenbeck Drywall to furnish materials on an individual per building basis, that the buildings on the project were separate and divisible, and that the notices of intent to file liens against buildings #1 and #2 were timely served within 90 days of the first deliveries to those buildings. We agree with those findings of facts and affirm the judgment of the trial court.

The Court of Appeals after a *de novo* review of the record found that there was only a single contract between Bob Ryan and Hollenbeck Drywall for the furnishing of materials to a single project consisting of six separate buildings. It held that the liens were void because they were not served within 90 days of the first delivery to the project, *i.e.,* within 90 days of the delivery of materials to buildings #4 and #5 on May 26, 1965.

As authority for the proposition that when several buildings are constructed under a single contract the project must be treated as a single improvement under the mechanics' liens act, the Court cited *Union Trust v Casserly,* 127 Mich 183; 86 NW 545 (1901); *Sandusky Grain Co v Borden's Condensed Milk Co,* 214 Mich 306; 183 NW 218 (1921); *David Lupton's Sons Co v Berghoff Printing Co,* 249 Mich 455; 229 NW 810 (1930); and *International Mill & Timber Co v Kensington Heights Home Co,* 215 Mich 178; 183 NW 793 (1921).

We are persuaded the Court of Appeals erred, both in its conclusion that there was a single

contract and in its application of the cases cited above. In every case cited the lien was held to be valid. The Court permitted lien claimants to file single liens against a project over objections that separate liens were required if there were separate contracts or separate buildings.

Although not applicable to those cases, but consonant with the rationale is a clause added to the basic act of 1891 by 1897 PA 143 which remains in its essential form within MCLA 570.1; MSA 26.281. In pertinent part that clause now reads:

"and in case of construction of a number of buildings * * * under 1 contract upon, around or in front of the same lot or contiguous lots for the same owner, part owner or lessee, of any interest in the real estate upon which said buildings are situated * * * such lien for such material or labor or leased equipment so furnished, shall attach to all of said buildings * * * together with the land upon, around or in front of which the same are being constructed, the same as hereinbefore provided in case of a single building * * * ."

But permitting the filing of a single lien does not forbid the filing of separate liens. The question of whether a claimant who furnishes labor or materials for separate buildings under a single contract may have separate liens upon each of the buildings has not been decided in Michigan.

Section 27 of the mechanics' liens act declares that the act is a remedial statute intended to benefit and protect subcontractors, materialmen, and laborers and should be construed liberally in order to carry out the intent of the Legislature. MCLA 570.27; MSA 26.307. See also *Smalley v Gearing,* 121 Mich 190; 79 NW 1114 (1899).

The intent of the Legislature when it amended

the statute in 1897 and the effect of the cases cited
by the Court of Appeals was to extend rather than
restrict the rights of mechanics and materialmen
in filing liens with the object being to permit the
filing of one lien rather than several.

Decisions in other jurisdictions under various
circumstances and statutes have held it to be
proper for a lien claimant to proceed by way of
separate lien claims with respect to separate build-
ings that are part of a single project. See 15
ALR3d 73, § 11[d], pp 143–145, and the cases cited
therein. The question of separate notices when
there is a single contract is not discussed in those
cases.

We are not convinced that the Michigan statute
precludes the filing of separate liens upon single
buildings when a claimant has furnished labor or
materials pursuant to a single contract. However,
since this lawsuit has been tried on the question of
separate contracts and the record supports the
finding of separate contracts, we do not decide the
case on the basis of a single contract.

In the instant case Bob Ryan contracted to
supply materials on a per building basis. It
claimed separate liens against buildings #1 and
#2 and served notices of intent to claim the liens
within 90 days of first delivering materials to
those buildings. We conclude that the notices were
timely served and fulfilled their purpose of alert-
ing the owners of Central Park North of the
possibility of liens, so that they could protect
themselves by following the procedures set forth in
MCLA 570.4; MSA 26.284. *Hartwick Lumber Co v
Chonoski,* 216 Mich 424; 185 NW 774 (1921).

The decision of the Court of Appeals is reversed.
The judgment of the trial court is affirmed.

Costs to plaintiff.

SWAINSON, WILLIAMS, LEVIN, M. S. COLEMAN, and J. W. FITZGERALD, JJ., concurred with T. G. KAVANAGH, C.J.

The late Justice T. M. KAVANAGH took no part in the decision of this case.