**MICHIGAN MILK PRODUCERS ASSOCIATION, a Michigan Corporation, Plaintiff,**

v.

**COMMERCIAL UNION INSURANCE COMPANY, a Massachusetts Corporation, Defendant.**

No. G76–138 CA1.

United States District Court, W. D. Michigan, S. D.

June 6, 1980.

Philip T. Carter, Foster, Swift & Collins, P. C., Lansing, Mich., for plaintiff.

Neill T. Peters, Fitzgerald, Young, Peters, Dakmak & Bruno, Detroit, Mich., for defendant.

## OPINION AND ORDER

DOUGLAS W. HILLMAN, District Judge.

Plaintiff Michigan Milk Producers Association (hereinafter "MMPA") brought this diversity action against defendant Commercial Union Insurance Company (hereinafter "CU") alleging that under Michigan law, excess insurance carriers are liable for a pro-rata share of pre-judgment interest. Jurisdiction is maintained under 28 U.S.C. § 1332. Both sides have moved for summary judgment. For the reasons that follow, I deny the parties' motions.

## FACTS

Prior to April 6, 1960, an insurance contract with a maximum liability of $50,000.00 was entered into between the plaintiff, MMPA, and the defendant, CU. Under the terms of this agreement, CU agreed to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . ." accident.

Supplemental provisions of the contract obligated CU to defend MMPA against any suit seeking damages payable under the policy, and to pay, in addition to the applicable limits of liability, "all costs taxed against the insured in any such suit or arbitration proceeding and all interest on the entire amount of any judgment and before the company has paid or tendered or deposited in court that amount of the judgment which does not exceed the limits of the company's liability thereon."

Under a separate condition of the policy, the contract became null and void where other insurance was available to the insured. In such a case, however, the defendant's policy acted as "excess insurance only". This condition reads as follows:

"14. *Other Insurance.* If other valid and collectible insurance exists protecting the insured against a loss covered by this policy, this policy shall be null and void with respect to said loss whether the insured is specifically named in such other policy of insurance or not; provided, however, that if the applicable limit of liability of such other valid and collectible insurance is not sufficient to protect the insured against such loss, this policy shall apply, but only as excess insurance over such other valid and collectible insurance in an amount equal to the applicable limit of liability of this policy and not as contributing insurance."

On April 6, 1960, near Millington, Michigan, a truck driven by Reuben Bush collided with a train owned by the New York Central Railroad Company. Reuben's truck, which was owned by Elmer Meyers, was insured by the Wolverine Insurance Company for $10,000.00. The plaintiff, however, was an entity legally responsible for the use of the vehicle.

Thereafter, on June 3, 1960, New York Central Railroad filed suit against both Meyers and the MMPA. Wolverine settled the case as to Meyers on the date of trial and paid $9,500.00 to the railroad. Nevertheless, Wolverine continued to defend the action on behalf of MMPA.

The case lingered in state court for many years, including an appeal and two trials. Meanwhile, the Michigan legislature, in 1963, enacted M.C.L.A. § 600.6013. That section obligates payment to successful litigants for interest on judgments dating back to the filing of complaints. Section 600.6013 reads as follows:

"Sec. 6013. Interest shall be allowed on any money judgment recovered in a civil action, such interest to be calculated from the date of filing the complaint at the rate of 6% per year unless the judgment is rendered on a written instrument having a higher rate of interest in which case interest shall be computed at the rate specified in the instrument if such rate was legal at the time the instrument was executed. In no case shall the rate exceed 7% per year after the date judgment is entered.

In the discretion of the judge, if a bona fide written offer of settlement in a civil action based on tort is made by the party against whom the judgment is subsequently rendered and the offer of settle-

ment is substantially identical or substantially more favorable to the prevailing party than the judgment, then no interest shall be allowed beyond the date the written offer of settlement is made."

Judgment was entered on behalf of the New York Central Railroad on July 30, 1974, in the amount of $97,618.77. Interest on this judgment, which dated back to the filing of the original complaint on June 3, 1960, amounted to $82,381.23. The judgment plus interest was settled for $170,-000.00 and a satisfaction was filed on October 16, 1974.

CU, with insurance limits of $50,000.00, paid $47,618.77 to the railroad on July 18, 1974, and the remaining amount of its maximum liability, $2,381.23, was paid on November 26, 1974. Thereafter, MMPA sued Wolverine Insurance for $500.00, the amount of its substantive liability under its contract which had not been paid. MMPA included in this complaint a demand for interest on the entire judgment. The case was discontinued, however, because MMPA concluded that under its reading of state court decisions, Wolverine could be held liable only for interest on $500.00, the unpaid amount of its primary liability, rather than interest on the entire judgment.

■ In March, 1976, MMPA commenced this action against CU for $42,468.50. This figure represents a pro-rata share of the pre-judgment interest based upon the amount of CU's maximum liability. Both parties have moved for summary judgment. MMPA argues that under Michigan law, and for reasons of public policy, an insurance company is liable for a pro-rata share of pre-judgment interest, even though that amount extends an insurance company's liability past its maximum. CU, on the other hand, contends that an excess carrier, where that carrier had no control of the underlying litigation, cannot be held to pay more than the maximum amount of its liability. For the reasons that follow, I hold that the party controlling the underlying litigation thereafter is obliged to pay the interest on the judgment. Because a question of material fact exists concerning which insurance company controlled the MMPA-New York Central Railroad litigation, I deny the parties' motions for summary judgment.

## DISCUSSION

### I.

Under M.C.L.A. § 600.6013, defendants are obliged to pay to successful plaintiffs interest on judgments dating back to the filing of the original complaints (pre-judgment interest). The effect of this provision upon insurance carriers' obligations has been litigated on several occasions, with mixed and often contradictory results.[1] However, a recent decision by the Michigan Supreme Court, *Denham v. Bedford*, 407 Mich. 517, 287 N.W.2d 168 (1980), makes it clear that, pursuant to Section 6013, insurance carriers in fact are liable for pre-judgment interest even though the underlying insurance contract denies liability for such interest, and even though the additional interest increases a carrier's liability past its maximum.[2] In reaching this conclusion, the court said at 535–536, 287 N.W.2d at 174:

"The Michigan Legislature has dictated that interest should accrue from the date of filing the complaint. If the legislative purpose was to compensate the prevailing party for the delay in payment of money

1. *See, Cosby v. Pool,* 36 Mich.App. 571, 194 N.W.2d 142 (1971), *lv. den.* 386 Mich. 782 (1972); *Westchester Fire Ins. Co. v. Ring Bros. Heating Co.,* 491 F.2d 711 (6th Cir. 1974); *Cates v. Moyses,* 57 Mich.App. 405, 226 N.W.2d 106, *modified* 394 Mich. 762, 228 N.W.2d 380 (1975); *Dittus v. Geyman,* 68 Mich. App. 433, 242 N.W.2d 800, *lv. den.* 397 Mich. 837 (1976); *Denham v. Bedford,* 82 Mich.App. 107, 266 N.W.2d 682 (1978), *aff'd.* 407 Mich. 517 (1980).

2. In reaching this conclusion, the Michigan Supreme Court expressly disagreed with *Westchester Fire Ins. Co. v. Ring Bros. Heating Co.,* 491 F.2d 711 (6th Cir. 1974), a previous Sixth Circuit decision where a unanimous panel, per curiam, held that Section 6013 could not amend an insurance contract which did not expressly provide for pre-judgment interest.

damages and to cover the costs of litigation, then this legislative purpose can only be effectuated by the allowance of pre-judgment interest, even if this interest exceeds the policy limits of an insurance contract.

\* \* \* \* \* \*

The result we reach today is fully supported by considerations of public policy. If we were to rule in favor of the insurer, the following would take place: the insured, not the insurer, would be responsible for the payment of the prejudgment interest in excess of the policy limits and, presumptively, interest on the entire judgment as well. Such a result would appear unconscionable."

Moreover, the Michigan court, at 528–532, 287 N.W.2d 168, expressly upheld the constitutionality of Section 6013 as applied to contracts written prior to 1965, the year Section 6013 was enacted. Consequently, even though a carrier contracted with the defendant prior to 1965, that carrier is now held to pay pre-judgment interest on judgments issued after the statute became effective.[3] *See also, Cosby v. Pool*, 36 Mich. App. 571, 194 N.W.2d 142 (1971), *lv. den.* 386 Mich. 782, 783 (1972).

In the present case, there is no dispute that the Wolverine Insurance Company was the primary insurer of the plaintiff MMPA, and that the defendant acted solely in the capacity of an excess insurer under Condition 14, as set out above.[4] It is clear, therefore, that pursuant to the rule set out in *Denham v. Bedford, supra*, Wolverine Insurance was liable to MMPA for at least some portion of the pre-judgment interest MMPA paid to the New York Central Railroad.

At issue in the present case is CU's liability to MMPA, if any, due to its position as an excess insurer.

MMPA contends that in several previous state court cases, insurers have been found liable for pre-judgment interest on amounts equal to their policies' maximum liabilities. For example, in *Cosby v. Pool, supra*, a Michigan Court of Appeals panel said at pages 578–579, 194 N.W.2d at page 146:

"An insurer can limit the risk it assumes. *Cottrill v. Michigan Hospital Service* (1960), 359 Mich. 472, [102 N.W.2d 179.] It follows that the insurer should be liable only for the interest that accrues on the amount of risk it has assumed. Otherwise, it would be paying interest on a risk it did not assume and for which it did not charge premiums. In this case, the judgment was for $200,000, while the insurer's liability was limited to $100,000.

Therefore, the case is remanded and the plaintiffs are granted the total interest of $34,333. However, the defendant insurer is liable only for the interest on its share of the judgment which is in the amount of $17,167."

Similarly, in *Cates v. Moyses*, 57 Mich. App. 405, 226 N.W.2d 106, *mod.* 394 Mich. 762, 228 N.W.2d 380 (1975), a second Court of Appeals panel held an insurer liable for pre-judgment interest on an entire judgment, as opposed to merely a pro-rata share, because of policy language obligating the insurer to pay "all interest on the entire amount of any judgment". The Michigan Supreme Court affirmed without opinion. However, based upon *Cosby v. Pool, supra*, the court modified the judgment and limited the award to interest based solely on the insurer's share of the judgment. *Accord, Dittus v. Geyman*, 68 Mich.App. 433, 242 N.W.2d 800 (1976).

MMPA contends, in light of these rulings, that insurers are liable for pro-rata shares of pre-judgment interest on damage awards. For this reason, it now seeks judgment against CU for $42,468.50, an amount representing CU's ratable share of the pre-judgment interest award to the New York Central Railroad.

---

3. The parties do not question here the propriety of awarding pre-judgment interest on suits initiated prior to 1965.

4. Both parties, in responding to recent correspondence of this court, agreed the CU was an excess insurer only. There is dispute, however, over which insurer controlled the underlying litigation.

To the contrary, defendant maintains that in Michigan, and for reasons of public policy, the insurance company which by right had control over litigation thereafter is liable for all of the pre-judgment interest. Alternatively, defendant argues that even if the primary insurer can be obligated to pay only a ratable share of the interest, excess insurers cannot be held to pay more than the limits of their policies.

A.

Although it is true, as plaintiff contends, that previous Michigan Court of Appeals cases have held insurance companies liable for pro-rata shares of pre-judgment interest, I do not believe that those cases are dispositive of the present action. Plaintiff's reliance on those cases is mistaken because of the recent Michigan Supreme Court decision, *Denham v. Bedford, supra,* where the court expressly reserved judgment on the question of whether an insurer who had full control over the underlying litigation should be held to pay all of the pre-judgment interest, or only a ratable share. Although the court in *Denham* ultimately held the defendant insurer to pay a partial share of the interest, the plaintiff there had demanded solely a pro-rata share. Therefore, the question of the amount of the primary insurer's liability for pre-judgment interest was not then before the court.

Nevertheless, the majority addressed this issue at page 533, 287 N.W.2d at page 173, saying:

"The only issue, tangentially related to the present one, which remains unresolved at common law is not whether an insurer is liable for interest on the policy limits but whether the insurer is liable for interest on the whole judgment. The courts have split on this issue although the majority and modern trend is in favor of holding the insurer liable for interest on the whole judgment."

Further, in a footnote to that excerpt, the court added:

"For a thorough discussion of this issue, see 76 A.L.R.2d 983. Although there is some Michigan authority to the contrary, see *e. g., Cates v. Moyses,* 57 Mich. App. 405, 226 N.W.2d 106 (1975), *mod.* 394 Mich. 762, 228 N.W.2d 380 (1975); *Cosby, supra,* this Court has never fully addressed the issue whether an insurer should be held liable for interest on the entire judgment."

These statements by the Michigan Supreme Court militate against plaintiff's position that in Michigan all insurers are required to pay a pro-rata share of the pre-judgment interest. Instead, there appears to be no precedential ruling on the subject in the state, and this court is consequently left to predict how the highest state tribunal would resolve the dispute if the issue were before it. *See,* IA (Part 2) *Moore's Federal Practice* ¶.309(2), p. 3117 (1979).

Two schools of thought apparently exist concerning an insurer's liability for interest where that insurer had control of the underlying litigation. *See,* 76 A.L.R.2d 983, *et seq.*[5] One school[6] holds that insurers can be compelled to pay interest only on amounts equal to their policy maximums because (a) policies which limit interest awards to "the amount of the judgment" are unambiguous, and the amount of damages adjudicated against the insurer can never be more than the policy maximum; (b) the insured, during the intermittent delay, had use of the money on that part of the judgment in excess of the policy limits; and (c) a contrary ruling would deny insurers the right to limit their risks.

The opposite view is supported by a second school of thought.[7] Under this view,

**5.** While the annotation concerns liability for interest on judgments, it equally applies where pre-judgment interest is concerned.

**6.** Represented by California, New York, Oklahoma (federal court case) and West Virginia (federal court case). *See,* Annot. 76 A.L.R.2d 983, 991 § 5.

**7.** Represented by Arkansas, Colorado, Florida, Illinois, Kansas, Louisiana, Maryland, Nebraska, New Hampshire, New Jersey, North Carolina, Tennessee, Texas, Virginia, Washington and Wisconsin. Two states, Ohio and Pennsylvania, have decisions holding each way. *See,* Annot. 76 A.L.R.2d 983, 987 § 4.

for public policy reasons insurers are held to pay interest on entire judgments, rather than pro-rata shares, because they had full control over the litigation. This latter principle is promoted because otherwise insurers could delay settling meritorious claims to the detriment of the insured. As the court in *Wilkerson v. Maryland Casualty Co.*, 119 F.Supp. 383 (E.D.Va.1953), *aff'd.* 210 F.2d 245 (4th Cir. 1954), observed at 388:

"Not infrequently judgment is obtained against an insured for an amount in excess of the coverage of the policy and it would seem a harsh rule to permit the insurer to litigate the entire case in an effort to save the amount of its coverage while interest on the excess accumulates against the insured. In some situations the consequences to the insured would be serious. With the company in control of the conduct of the case the policy holder is powerless should he desire to effect a settlement unless the company consents. Upon the other hand, the company may at any time relieve itself of liability for the excess interest by paying or tendering or depositing in court the amount of the limit of its liability under the policy."

The same public policy reasons supporting the principle that primary insurers ought to pay all of the pre-judgment interest were recently echoed by the Michigan Supreme Court in *Denham v. Bedford, supra*. Although the court there dealt with the question whether an insurer could be obligated to pay pre-judgment interest where such an award would result in an insurer's liability for more than its policy maximum, the court justified in part its ruling by saying at pages 535–536, 287 N.W.2d at pages 174–175:

"The result we reach today is fully supported by considerations of public policy. If we were to rule in favor of the insurer, the following would take place: the insured, not the insurer, would be responsible for the payment of the prejudgment interest in excess of the policy limits and, presumptively, interest on the entire judgment as well. Such a result would appear unconscionable.

We note that by the very terms of the insurance policy the insurer retained control over any investigation process, settlement or litigation. The insured had no control over the process and if the insured chose to act or attempted to settle of his own volition, he would run the risk of forfeiture of any rights under the policy. Many courts, in similar situations, have held that the insurer should be liable for interest on the policy limits or judgment because of this very element of control which the insurer wields over the settlement and litigation process. *United Services Automobile Ass'n v. Russom*, 241 F.2d 296 (CA 5, 1957); *Powell* [*v. T. A. & C. Taxi Co.*, 104 N.H. 428, 188 A.2d 654 (1963)], *supra* ; *Crook* [*v. State Farm Mutual Automobile Ins. Co.*, 235 S.C. 452, 112 S.E.2d 241 (1960)], *supra.*

As the Court of Appeals below pointed out, no manifest injustice is committed by holding the insurer liable for prejudgment interest. The insurer had complete control over the $40,000 policy limits from April 17, 1974, the date of filing the complaint, until after September 9, 1976 when it tendered the $40,000 without interest. Even assuming that the insurer were required to set the funds aside from its general investment fund because of the pending litigation, the funds did not remain idle. The funds were invested. And, again, even assuming that the funds were invested in conservative short-term enterprises, the insurer certainly would not lose anything by paying the prejudgment interest but would probably retain a profit.

Payment of prejudgment interest not only compensates the prevailing party but also liability for prejudgment interest may act as an incentive to the insurer to promptly settle a meritorious claim. Without such an incentive, the insurer may refuse to settle a meritorious claim in hopes of forcing plaintiff to settle for less than the claim's true value. The insurer risks nothing. Even if protracted litigation results, the insurer will only be liable for its policy limits—all the while reaping a tidy sum from its investment of the policy limits."

In light of the fact that the great majority of courts which have interpreted insurance contracts similar to the one involved in this case support the principle that primary insurers are obligated to pay the entire amount of pre-judgment interest, and because the Michigan court has recently expressed the same sentiments about protecting insureds, I believe that the Michigan Supreme Court, if directly faced with this question, would side with the majority. I therefore conclude that in Michigan, insurers who had full control over the underlying litigation thereafter are obliged to pay all of the pre-judgment interest.

B.

 MMPA has indicated to the court that it does not concede which insurer controlled the MMPA-New York Central Railroad litigation. This is a factual question which is crucial to the resolution of the present action. If the defendant exercised no control, even though it may have had the right of control,[8] then under the holding of this case, the defendant cannot be held to pay a share of the pre-judgment expenses. Conversely, if CU controlled, in whole or part, the underlying litigation, CU must bear an equal portion of the pre-judgment interest which the plaintiff was obliged to pay under state law to the New York Railroad. Dispute over this factual issue prevents the court from granting, at this time, defendant's motion for summary judgment.

### II.

 Plaintiff maintains, however, that under the terms of its policy, CU was obligated to cover litigation expenses and interest, regardless of whether it was a primary or excess insurer, and regardless of who controlled the underlying litigation. MMPA supports this position by referring to Section II(b)(2) of the policy, which requires the insurer to pay:

"(2) all expenses incurred by the company, all costs taxed against the insured in any such suit or arbitration proceeding

and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;"

MMPA reads this excerpt as obligating CU to pay interest on *any* judgment covered by the policy, including judgments arising out of its excess coverage. Otherwise, plaintiff charges, "we reach the anomalous result that interest is recoverable over the policy limit where the policy applies as primary coverage, but not when it applies as excess coverage."

I disagree with plaintiff's reading of the contract. Condition 14, as set out earlier, voids other policy provisions except insofar as the defendant undertakes to insure the plaintiff, up to the limits of liability, for loss not covered by the plaintiff's primary insurer. Condition 14, therefore, nullifies Section II(b)(2), and plaintiff is mistaken in relying on it.

### III.

For the reasons set out above, I conclude that insurers with control over the insured's defense are obliged to pay the resulting pre-judgment interest. The parties' summary judgment motions are denied because a material factual question exists concerning whether or not the defendant had control over the plaintiff's earlier state court suit. I further deny plaintiff's motion for summary judgment because the insurance contract did not obligate, on its terms, interest coverage by the defendant where defendant acted solely as an excess insurer.

IT IS SO ORDERED.

---

8. Under the language contained in Condition 14, I do not believe that CU, as an excess insurer, had the right to defend the plaintiff.